

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-26-2003

# USA v. Warren

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3825

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Warren" (2003). *2003 Decisions.* Paper 249.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/249

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-3825

———————

UNITED STATES OF AMERICA

v.

JOSEPH C. WARREN,

Appellant

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

(Dist. Court No.  02-cr-00019)
District Court Judge: Hon. Gregory M. Sleet

———————

Submitted Under Third Circuit LAR 34.1(a)
September 11, 2003

Before: ALITO, BARRY and AMBRO, Circuit Judges.

( Filed: September 26, 2003)

———————

OPINION OF THE COURT

———————

ALITO, <u>Circuit Judge</u>:

This is an appeal from the District Court's judgment imposing, as a condition of supervised release, that Joseph C. Warren submit to random polygraph examinations at the direction and discretion of the United States Probation Office. Because we conclude that imposition of this condition does not violate Warren's due process rights, we affirm.

**I.**

On December 14, 2001, Warren was charged by criminal complaint with the receipt of child pornography transmitted through interstate commerce by computer. After reviewing the complaint, the District Court issued an arrest warrant for Warren. On April 23, 2002, Warren pled guilty to one count of receiving child pornography through interstate computer transmission, in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1).

On August 22, 2002, Probation Officer Martin Durkin provided counsel for both parties with the Presentence Investigation Report (PSR). Neither the government nor Warren had any objections. The revised PSR was provided to counsel a week before the September 25, 2002 sentencing.

At approximately 5:15 p.m. on September 24, 2002, counsel for the Government telephoned defense counsel to advise that the Government would be seeking a condition of supervised release requiring random polygraph examinations. By letter hand delivered to the chambers of the sentencing judge and faxed to defense counsel, the Government stated: "At sentencing the United States intends to recommend the following condition of

supervised release: the defendant shall submit to random polygraph examinations, designed to monitor the defendant's compliance with release conditions and administered by a certified examiner, at the direction and discretion of the United States Probation Office." Defense counsel did not receive the government's message until after 8 p.m. on September 24.

At the sentencing hearing on September 25, 2002, the District Court sentenced Warren to 33 months of incarceration and imposed a three-year term of supervised release. The District Court indicated that it intended to impose the Government's proposed random polygraph condition, and Warren argued that his due process rights were violated due to a lack of adequate notice that the court might impose the polygraph condition. Warren further argued that with more notice he would have been able to have his psychological expert assist him in researching how polygraph tests are administered in other jurisdictions and provide an opinion as to whether Warren's purported limited mental capacity made him ill-suited for application of a polygraph test.

The District Court's concern with Warren's notice argument led it to suggest and initially grant a 30-day continuance to permit counsel to obtain expert assistance to supplement his challenge to the polygraph condition. However, the District Court was also moved by Warren's repeated warnings that he was "on the edge" and might act on

his impulses if he did not soon receive treatment.[1]  The District Court was further moved by the United States Probation Officer's acknowledgment that the grant of a continuance would likely negate the possibility of Warren's receiving treatment through the one avenue that would provide him needed help, the Federal Medical Center in Butner, North Carolina, which provides specific treatment for inmates with disorders such as Warren's.[2]

The court sentenced Warren to the top of the applicable guideline range (27-33 months) and followed the 33-months of incarceration with three years of supervised release.  To supplement the standard conditions of supervised release, the court imposed additional terms.  Additional Supervised Release Term 9 provides:

> The defendant shall submit to random polygraph examinations with a certified examiner, at the direction and discretion of the United States Probation Office.  Questioning during said polygraph examination shall relate only to the defendant's compliance or non-compliance with the conditions of his supervised release.[3]

---

[1] Warren stated that "if he did not receive counseling, he might eventually molest a small child."  PSR ¶ 7-8, 16.

[2] Warren had been labeled as being seriously emotionally disturbed since adolescence.  PSR ¶ 60.  He also had a low IQ and a school history of special education classes with counseling.  Id.  A psychological report prepared by Timothy P. Foley, Ph.D., who was retained by the defense, noted that Warren suffers from a Schizotypal Personality Disorder and would need further examination to establish whether he also has an Obsessive-Compulsive Disorder.  Id. at ¶ 58.  Additionally, Warren personally indicated that he needs and wants help.  Accordingly, the Judgment and Conviction Order states: "The court strongly recommends to the [Bureau of Prisons] that defendant be confined at [Federal Correctional Institution] Butner in the Sex Offender Treatment Program."

[3] In addition to the polygraph condition, six other conditions related to Warren's status as a sex offender.  These conditions: (i) required Warren to participate in a mental

Warren appeals this particular condition of supervised release on the basis that the condition was imposed without adequate notice, thus violating his due process rights.

## II.

The District Court's decision to impose conditions of supervised release without granting Warren a continuance is reviewed for abuse of discretion. United States v. Loy, 237 F.3d 251, 256 (3d Cir. 2001). This Court's review of issues involving application of the Federal Rules of Criminal Procedure as related to due process is plenary. See United States v. Bertoli, 40 F.3d 1384, 1397 (3d Cir. 1994); United States v. Barnhart, 980 F.2d 219, 220 (3d Cir. 1992).

## III.

### *A.*

At the heart of Warren's argument against the District Court's imposition of the random polygraph examination condition of supervised release is the notion that such a condition of release is improper. We disagree.

Recently, in United States v. Lee, we held that it was not an abuse of discretion under Fed. R. Crim. P. 32(c)(1) to impose a polygraph condition as a release term, notwithstanding the rule's provision requiring a court to afford parties an opportunity to

---

health treatment program; (ii) required Warren to register as a convicted sex offender; (iii) prohibited Warren from having internet access in his home; (iv) prohibited Warren from possessing any type of obscene material; (v) prohibited Warren from having unsupervised contact with minors or patronizing establishments frequented by minors; and (vi) prohibited Warren from associating with known sex offenders, other than in a treatment program.

comment on sentencing provisions. 315 F.3d 206, 215-16 (3d Cir. 2003) (affirming a polygraph examination condition even though the probation officer did not mention the polygraph condition in the Presentence Report and the District Court refused to allow additional briefing from counsel on the issue at the sentencing hearing). We acknowledged that, according to Fed. R. Crim. P. 32(c)(1), "the court must afford counsel for the defendant and for the Government an opportunity to comment on . . . matters relating to the appropriate sentence." Moreover, counsel for the defendant and the Government must be "provided with a meaningful opportunity to address the information at issue." United States v. Nappi, 243 F.3d 758, 764 (3d Cir. 2001).

However, we ultimately held that imposing a requirement that a defendant submit to random polygraph tests as a condition of supervised release was not an abuse of discretion, despite the contention that the defendant did not have advance notice that the court was considering the condition and was not afforded additional briefing on the issue at the sentencing hearing, when the psychological evaluation upon which the court relied in imposing the condition was made available to defense counsel prior to the sentencing date, the defendant obtained independent psychological examination in an attempt to counter the evaluation, and additional briefing would not have affected the court's decision to impose the condition. Similarly, in this case the District Court relied on a psychological report prepared by a doctor who had been retained by the defense and Warren's own statements, both of which were available to the defense prior to sentencing.

-6-

In Lee, we emphasized that "the scope of the [polygraph] questioning should be limited to that which relates to the supervision, monitoring, and treatment of the appellant." Lee, 315 F.3d at 215. The term at issue here does so by providing that "said polygraph examinations shall relate only to the defendant's compliance or non-compliance with the conditions of his supervised release." Accordingly, the District Court did not abuse its discretion by imposing a random polygraph examination term as a condition of Warren's release.

## B.

Warren argues that the District Court erred by failing to give the defense an opportunity to respond to the proposed polygraph special condition of supervised release. Warren proposes that a continuance for 30 days was necessary to secure the expert assistance required to respond adequately, due to the unique combination of Warren's mental health issues and low IQ. We disagree.

The requirements of due process have been incorporated into the Federal Rules of Criminal Procedure, which governs conditions of supervised release. See, e.g., Barnhart, 980 F.2d at 222-23 (discussing the relationship between due process and Fed. R. Crim. P. 32.1). Fed. R. Crim. P. 32(i)(1)(C) provides that "[a]t sentencing, the court: . . . must allow the parties' attorneys to comment on . . . matters relating to an appropriate

sentence."[4] The Supreme Court has interpreted this rule to entitle defendants to presentence notice of a sentencing court's intention to depart *upward* from the otherwise applicable sentencing guideline range to impose a longer sentence of incarceration. See Burns v. United States, 501 U.S. 129, 135-136 (1991). Warren contends that this provision of Rule 32 also requires that presentence notice be given before a sentencing court imposes a condition of supervised release making a defendant subject to random polygraph examinations in order to monitor compliance with release conditions. However, "[c]ourts have been reluctant to include conditions of supervised release or probation within the disclosure requirements of Burns, apart from requiring notice in instances of community notification provisions for sex offenders." See United States v. Warren, 186 F.3d 358, 366 n.5 (3d Cir. 1999) (refusing to extend the rationale of Burns to cover travel restrictions).

Neither the Supreme Court nor this Court has held that the Due Process Clause "entitles a defendant to advance notice of the information upon which he or she will be sentenced or to comment meaningfully on that evidence." See Burns, 501 U.S. at 135-136 (limiting the notice requirement to imposing a longer sentence of incarceration).[5]

---

[4] We addressed this rule in Nappi, 243 F.3d at 764, and held that counsel for the defendant and the government must be "provided with a meaningful opportunity to address the information at issue." See also Lee, 315 F.3d at 216.

[5] In the specific context of the Government's seeking an enhanced sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), we held that due process does not require the Government to provide formal pretrial notice, where the Act itself does not require such form of notice. United States v. Mack, 229 F.3d 226, 231-32 (3d Cir. 2000).

When notice is required, the adequacy of notice is assessed by reference to the specific facts and circumstances of each case. See United States v. Reynoso, 254 F.3d 467, 474 (3d Cir. 2001) ("[W]e decline to establish a hard-and-fast rule as to how much advance notice is required; the answer will vary from case to case, depending on the complexity of the sentencing issue in dispute and the volume of additional material upon which the court intends to rely"). The facts and circumstances of this case indicate that the notice afforded Warren was adequate to satisfy due process. Warren had been labeled as being seriously emotionally disturbed since adolescence. He had a low IQ and a school history of special education classes with counseling. Warren suffers from a Schizotypal

---

Other courts have rejected arguments similar to Warren's, refusing to mandate pre-sentence notice of conditions of supervised release. See United States v. Lopez, 258 F.3d 1053, 1055-56 (9th Cir. 2001) (rejecting requirement of presentence notification for condition requiring participation in mental health treatment program and release of treatment information); United States v. Brown, 235 F.3d 2, 5 (1st Cir. 2000) ("[A]ppellate tribunals have been reluctant to impose Burns-like obligations on sentencing courts in respect to special conditions of probation or supervised release. . . . We share this reluctance. We hold, therefore, that where, as in this case, a special condition of probation or supervised release [here, a "stay dry" non-excessive use of alcohol condition] falls within the general range of sentencing options made available under the guidelines, a defendant is not entitled to advance notice of the sentencing court's intention to impose that condition."); United States v. Mills, 959 F.2d 516, 519 (5th Cir. 1992) ("We do not believe it to be in the interest of justice or the efficient administration of the sentencing process to extend the notice requirements of Burns to cases where the defendant's term of confinement is not at stake. Requiring trial judges to give prior notice of their intent to impose an occupational restriction would only further encumber the lengthy sentencing process without adding anything to the defendants' existing procedural protections."); see also generally United States v. Guthrie, 144 F.3d 1006, 1012 (6th Cir. 1998) ("Burns requires that notice be given in the narrow situation of departures from the Sentencing Guidelines. Burns does not require notice of all possible sentencing factors.").

Personality Disorder and required additional examination to establish whether he suffered from other disorders. Warren also personally indicated that he desired help.

Warren's counsel had represented a similarly-situated defendant sentenced to the random polygraph condition by the same judge presiding here. That case involved the same prosecutor and probation officer.[6] Further, Warren's counsel had written two appellate briefs relating to the polygraph condition and had been notified by the government of its intent by telephone and by letter the day before the sentencing hearing.

**IV.**

The District Court did not abuse its discretion by imposing a random polygraph examination term as a condition of Warren's release. Additionally, the District Court's imposition of the random polygraph special condition of supervised release without granting Warren a continuance to secure expert assistance did not violate Warren's due process rights. Accordingly, we affirm the judgment and sentence.

---

[6] Moreover, the same District Court judge who was presiding over Warren's case had imposed a polygraph condition of supervised release on a sex offender who was represented by the same defense counsel representing Warren. The Assistant United States Attorney who had prosecuted the previous sex offender was also prosecuting Warren. The same probation officer was assigned to both cases. In short, the judge, defense counsel, probation officer and Assistant United States Attorney in this case are the same as in United States v. Lee, 315 F.3d 206 (3d Cir. 2003).

-10-

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

/s/ Samuel Alito

Circuit Judge
