

Villanova University School of Law

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-21-2007

# USA v. Kenrick

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5077

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Kenrick" (2007). *2007 Decisions*. Paper 565.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/565

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-5077

UNITED STATES OF AMERICA

v.

DERRICK KENRICK,

Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 04-00291)
Honorable Arthur J. Schwab, District Judge

Argued June 8, 2007

BEFORE: SMITH, and GREENBERG, Circuit Judges,
and POLLAK,* District Judge

(Filed: August 21, 2007)

Lisa B. Freeland
Federal Public Defender
Karen S. Gerlach (Argued)
Assistant Federal Public Defender

*Honorable Louis H. Pollak, Senior Judge of the United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

Office of Federal Public Defender
1450 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222

      Attorneys for Appellant

Mary Beth Buchanan
United States Attorney
Laura S. Irwin
Assistant U.S. Attorney
Robert L. Eberhardt (Argued)
Assistant U.S. Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

      Attorneys for Appellee

———

OPINION OF THE COURT

———

GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I.  INTRODUCTION

On November 8, 2004, a grand jury in the Western District of Pennsylvania returned an indictment against appellant Derrick Kenrick[1] ("Kenrick"), charging him with one count of violating 18 U.S.C. § 2423(b).  Kenrick subsequently pled guilty to the indictment on July 7, 2005, pursuant to a plea agreement he reached with the government.  On November 4, 2005, the district court sentenced Kenrick to 46 months' imprisonment

---

[1]Kenrick was indicted as "Derrick Kenrick, a/k/a Charles Salter, a/k/a Charles Saiter." App. at 13.  According to the Presentence Report ("PSR"), Kenrick changed his name in September 2003 to "Derrick Ian Kenrick" for "personal reasons."  PSR ¶ 45.

to be followed by a lifetime term of supervised release.  Kenrick's supervised release was conditioned on several requirements, including that he participate in a sex offender treatment program, be prohibited from possessing any materials depicting or describing sexually explicit conduct as defined by 18 U.S.C. § 2256(2), agree to submit to polygraph examinations to determine his compliance with the conditions of his supervised release, and cooperate in the collection of his DNA at the direction of his probation officer. Kenrick does not challenge either his conviction or the length of his custodial sentence. Rather, he protests the district court's imposition of the lifetime term of supervised release as well as the above-listed special conditions of that release.  In a result consistent with our recent decision in United States v. Voelker, 487 F.3d 139 (3d Cir. 2007), we will vacate the judgment imposing Kenrick's sentence insofar as it includes a lifetime term of supervised release as well as the related requirement prohibiting Kenrick from possessing sexually explicit materials, and will remand for resentencing.

## II.  FACTS AND PROCEDURAL HISTORY

A.    Conduct Underlying the Charges

Kenrick, then a 46-year-old Georgia resident, met the victim, then a 13-year-old Pennsylvania resident, online in May 2002.[2]  Over the next several years, Kenrick and the

---

[2]It appears that the victim did not learn Kenrick's age when they first met online.  See PSR ¶ 9 ("At the time of their initial meeting, the defendant told the victim that he was 19 years old; he later told her he was 22 years old.").

victim communicated regularly, both online and by telephone. Subsequently, when the victim turned 15, Kenrick asked her to marry him, indicating that he was going to come to Pennsylvania to meet and live with her.

In August 2004, Kenrick did indeed travel from Georgia to Pennsylvania where he went to the victim's home. The victim, however, was not there when he arrived. Kenrick returned several days later, meeting the victim in person for the first time. Although Kenrick returned to Georgia, he subsequently traveled back to Pennsylvania, this time staying with the victim's family. While in the victim's home, Kenrick and the victim engaged in various sexual acts.[3] Kenrick eventually moved into an apartment located in Canonsburg, Pennsylvania, the town in which the victim lived, and continued to see her for several weeks. Ultimately, however, the victim's parents asked Kenrick not to see the victim any longer.

B.     The Charges

Law enforcement authorities first became aware of Kenrick's conduct in September 2004, a discovery which led them to file a criminal complaint against him. Kenrick then was apprehended in October 2004. He subsequently admitted to the authorities both that he came to Pennsylvania for the express purpose of meeting the victim, and that he had engaged in sexual acts with her when she was 15 years old.

---

[3]Kenrick admits he touched the victim's genitalia. Although the victim has stated their relationship encompassed more than mere touching, she does not admit to having engaged in sexual intercourse with Kenrick.

A grand jury in the Western District of Pennsylvania returned an indictment against Kenrick on November 8, 2004, charging him with one count of violating 18 U.S.C. § 2423(b), which states in relevant part:

> A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years or both.

18 U.S.C. § 2423(b).  The indictment, citing to the 2003 Sentencing Guidelines, set forth various sentencing allegations, including that the base offense level for Kenrick's crime was 24 (citing U.S.S.G. § 2A3.2(a)(1)); the victim was in Kenrick's custody, care, or supervisory control (citing U.S.S.G. § 2A3.2(b)(1)); a computer or Internet access device was used to persuade, induce, entice, or coerce the victim to engage in prohibited sexual conduct as well as to facilitate transportation or travel by Kenrick to engage in the same (citing U.S.S.G. § 2A3.2(b)(3)); the victim was a vulnerable victim (citing U.S.S.G. § 3A1.1(b)); Kenrick obstructed or impeded the administration of justice (citing U.S.S.G. § 3C1.1); and an upward departure was warranted (citing U.S.S.G. § 5K2.0).

C.     Plea Negotiations and the Presentence Report

Although Kenrick previously had pleaded not guilty, on July 7, 2005, pursuant to the plea agreement he reached with the government, he changed his plea to guilty. During Kenrick's change of plea hearing, Kenrick and the government agreed that the 2004 Sentencing Guidelines applied and that a sentence at the upper end of the guidelines

5

range (i.e., approximately 46 months) would be both reasonable and appropriate.[4] Id. at 25-26. Kenrick agreed as well to register as a convicted sex offender upon his release from prison. Id. at 34. The district court accepted Kenrick's guilty plea, as set forth in the plea agreement. Id. at 36.

In anticipation of Kenrick's sentencing hearing, the United States Probation Office prepared a Presentence Report ("PSR"). Relying on the 2003 version of the Sentencing Guidelines, the United States Probation Office applied U.S.S.G. § 2A3.2(a)(1), resulting in a base offense level of 24. To this total, it added 4 levels: 2 under U.S.S.G. § 2A3.2(b)(1) because the victim was in Kenrick's custody, care, or supervisory control and 2 under U.S.S.G. § 2A3.2(b)(3) because Kenrick used a computer or Internet access device to persuade, induce, entice, or coerce the victim to engage in prohibited sexual conduct. With a 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, the Probation Office calculated Kenrick's total offense level to be 25. Combined with a criminal history category of I, this total offense level yielded a sentencing guideline range of 57 to 71 months' incarceration. Additionally, the PSR indicated that

---

[4]Specifically with respect to Kenrick's sentence, the parties agreed that the court should apply U.S.S.G. § 2A3.2, resulting in a base offense level of 18. To this base level, 6 levels were added: 4 under U.S.S.G. § 2A3.2(b)(1) because the victim was in Kenrick's custody, care, or supervisory control and 2 under U.S.S.G. § 2A3.2(b)(3) because Kenrick used a computer or Internet access device to persuade, induce, entice, or coerce the victim to engage in prohibited sexual conduct. With a 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, Kenrick's total offense level was calculated to be 21. Combined with a criminal history category of I, this yielded a sentencing guideline range of 37 to 46 months' incarceration.

the court could impose a lifetime term of supervised release on Kenrick.[5]

Kenrick objected to the calculations in the PSR, arguing that the court should apply the 2004, rather than the 2003, version of the Sentencing Guidelines, pursuant to the parties' plea agreement. Additionally, Kenrick disagreed with the PSR's statements that he had committed various sexual acts it listed.[6]

On November 3, 2005, the district court ruled on Kenrick's objections to the PSR. The court agreed with Kenrick that it should apply the 2004, rather than the 2003, version of the Sentencing Guidelines. App. at 55 ("The court agrees with defendant that the parties are capable and competent to enter into a plea agreement specifying which version of the sentencing guidelines [is] to be used and stipulating to various sentencing factors and even specific sentences or ranges (bounded by the statutory minimums and maximums)."). The court added, however, that "[i]n arriving at an appropriate sentence," it would "consider[] the numerous statutory factors set forth in section 3553." Id. Finally, the court accepted as true those fact findings of the PSR not in dispute.

D.     The Sentencing

Kenrick's sentencing hearing was held on November 4, 2005. Key among topics

---

[5]The 2004 version of the Sentencing Guidelines recommended that a court impose a lifetime term of supervised release based on the crime Kenrick committed. U.S.S.G. § 5D1.2(b)(2).

[6]In a joint status report filed on October 20, 2005, the parties agreed that the court need not hold an evidentiary hearing to resolve the factual disputes, given the sentence to be imposed.

discussed was whether Kenrick should be subject to a lifetime term of supervised release. On this point the government argued it was "not convinced that this man will not re-offend. He apparently does have an interest in younger women, and we think that for the safety of society a lifetime supervised release term is appropriate in this case." Id. at 75. Counsel for Kenrick strongly protested this assertion, responding:

> With respect to the supervised release matter, I would suggest that this is not a case where a lifetime of supervised release is called for. Again, there is no evidence of any child pornography or pedophilia. I believe a term of supervised release within the guidelines, combined with the fact that my client will need to register as a sex offender, will be a sufficient check upon him. And that he should not be and the Government should not be burdened with the cost and expense of having him supervised for the rest of his life. This is just not one of those cases.

Id. at 75.

In accordance with the plea agreement, the district court sentenced Kenrick to 46 months' incarceration. Moreover, the court imposed a lifetime term of supervised release upon the conclusion of Kenrick's prison term. With respect to its ruling, the district court offered the following explanation:

> The reasons for the imposition of the sentence [are] as follows: The Court considers the sentence imposed to be sufficient, but no greater than necessary for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense; to afford adequate deterrence; protect the public against commission of further crimes by this Defendant; and to provide the Defendant with needed and effective educational or vocational training, medical care, or other correctional treatment.

> The Court has considered the surrounding circumstances and the relative

8

severity of this offense, the impact upon the victim, including the age of the victim and the related circumstances.  The Court considers what occurred here to be a serious crime requiring serious sentencing, coupled with a lifetime of supervised release.

Additionally, the Court has considered all the other factors set forth in Title 18 United States Code, Section 3553(a), including the nature and circumstances of the offense, the Defendant's history and characteristics, the kinds of sentences available for this offense, sentencing guideline range under the advisory guidelines adopted by the United States Sentencing Commission for the category of this offense and the Defendant's criminal history.  The Court has also considered any applicable policy statements adopted by the Sentencing Commission, the need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any of the victims of the offense.

Id. at 79-80.

As we have indicated, the district court imposed several conditions on the term of supervised release.  As material here, it ordered Kenrick to "participate in a mental health treatment program, including sex offender treatment, as approved and directed by his probation officer" and "abide by all rules, requirements, and conditions of the sex offender treatment program, including submission to polygraph examination to determine compliance with the conditions of supervision."  Id. at 77-78.  It also prohibited Kenrick from possessing "any pictures, books, writings, drawings, videos, DVDs, video games, or other similar material depicting or describing sexually explicit conduct as defined by Title 18 United States Code, Section 2256(2)."  Id. at 78.  Finally, it ordered Kenrick to "cooperate in the collection of his DNA at the direction of his probation officer."  Id. at

9

79.

Kenrick's counsel objected to the district court's imposition of a lifetime term of supervised release as well as the above outlined conditions. Id. at 82-85. The court overruled these objections in their entirety and entered its judgment of conviction and sentence on November 10, 2005.

Kenrick now appeals.


### III.  JURISDICTION AND STANDARD OF REVIEW

The district court exercised jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

Generally, we review the imposition of special conditions on a defendant's supervised release for abuse of discretion. United States v. Smith, 445 F.3d 713, 716 (3d Cir. 2006); United States v. Crandon, 173 F.3d 122, 127 (3d Cir. 1999). Where, however, the court imposed the condition without objection, we review for plain error only. Voelker, 489 F.3d at 143 n.1; United States v. Warren, 186 F.3d 358, 362 (3d Cir. 1999). Here, because Kenrick objected to all of the above listed special conditions, we employ an abuse of discretion standard.

Additionally, we observe that in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), "the Supreme Court directed appellate courts to review sentences for

10

reasonableness, stating this review applied 'across the board.'" United States v. Cooper,

437 F.3d 324, 326 (3d Cir. 2006) (quoting Booker, 125 S. Ct. at 764-67).  An appellate

court will uphold a sentence as reasonable if "the record as a whole reflects rational and

meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)."[7]  United

States v. Grier, 475 F.3d 556, 571 (3d Cir. 2007) (en banc).  "The factors of § 3553(a), of

course, are to be considered in imposing conditions of supervised release[]" as well.

---

[7]Section 3553(a) instructs that sentencing courts take into account the following factors when sentencing a defendant:

> (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)    the need for the sentence imposed–
>     (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B)    to afford adequate deterrence to criminal conduct;
>     (C)    to protect the public from further crimes of the defendant; and
>     (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3)    the kinds of sentences available;
> (4)    the kinds of sentence and the sentencing range established for–
>     (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–
>         (i)    issued by the Sentencing Commission...;
> (5)    any pertinent policy statement–
>     (A)    issued by the Sentencing Commission...;
> (6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

11

Smith, 445 F.3d at 716 (citing 18 U.S.C. § 3583(d)); see also Voelker, 489 F.3d at 143 (noting any condition of supervised release "must be 'reasonably related' to the factors set forth in 18 U.S.C. § 3553(a)"). Notably, while "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors," it "need not discuss every argument made by a litigant if an argument is clearly without merit." Cooper, 437 F.3d at 329. "Nor must a court discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing." Id.

Significantly, however, conditions of supervised release "must impose 'no greater deprivation of liberty than is reasonably necessary' to deter future criminal conduct, protect the public, and rehabilitate the defendant." Voelker, 489 F.3d at 144 (quoting 18 U.S.C. § 3583(d)(2)). Additionally, "[c]onditions of supervised release must be supported by some evidence that the condition imposed is tangibly related to the circumstances of the offense, the history of the defendant, the need for general deterrence, or similar concerns." Id.; see also United States v. Pruden, 398 F.3d 241, 249 (3d Cir. 2005) ("[A] condition with no basis in the record, or with only the most tenuous basis, will inevitably violate § 3583(d)(2)'s command that such conditions involve[] no greater deprivation of liberty than is reasonably necessary.") (internal quotations and citation omitted). Therefore courts of appeals, including this one, "have consistently required district courts to set forth factual findings to justify special probation conditions."

12

Warren, 186 F.3d at 366. Where a district court fails to make the findings, however, "we may nevertheless affirm the condition if we can 'ascertain any viable basis for the . . . restriction in the record before the District Court . . . on our own.'" Voelker, 489 F.3d at 144 (quoting Warren, 186 F.3d at 367); see also Cooper, 437 F.3d at 330 (stating we apply a deferential standard of review to a district court's sentencing decisions).

With these precepts in mind, we turn to the arguments Kenrick advances on this appeal.

## IV. DISCUSSION

A.      Lifetime term of supervised release and lifetime ban on possession of sexually explicit materials

Kenrick claims first that the district court acted unreasonably in imposing a lifetime term of supervised release and, as a special condition of that release, prohibiting him from possessing any pictures, books, writings, drawings, videos, DVDs, video games, or other similar material depicting or describing sexually explicit conduct as defined by 18 U.S.C. 2256(2).[8] Kenrick argues as well that the prohibition against

---

[8] 18 U.S.C. § 2256(2)(A) defines "sexually explicit conduct" as "actual or simulated-- (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A).

13

possessing sexually explicit materials violates his First Amendment rights.[9]  For the

following reasons, we agree.

We recently addressed the propriety of a sentence similar to that of Kenrick's in

United States v. Voelker.  In Voelker the defendant pled guilty to possessing child

pornography in violation of 18 U.S.C. § 2252(a)(2).  Among other things, the district

court sentenced the defendant to a lifetime term of supervised release and, as a special

condition of that release, prohibited him from possessing "any materials, including

pictures, photographs, books, writings, drawings, videos or video games depicting and/or

describing sexually explicit conduct as defined at Title 18, United States Code, Section

2256(2)."  Voelker, 489 F.3d at 143.  On appeal, we vacated the lifetime term of

supervised release as well as the special condition and remanded the case for

resentencing.  Id. at 142.  Specifically with respect to the district court's prohibition on

sexually explicit materials, we noted "[a]t first blush, this restriction appears to be

sufficiently related to Voelker's offense to survive his challenge."  Id. at 151.  We added,

however, that:

> Although a ban on accessing sexually explicit material involving children

---

[9]At sentencing, Kenrick's counsel specifically objected to the district court's imposition of this condition to Kenrick's term of supervised release, arguing: "And I would finally object to the limitation on exposure to sexual matters that go beyond child pornography and child related sexual conduct.  I believe that that's unwarranted and overbroad and an overbroad restriction in this case in violation of my client's First Amendment rights."  App. at 85.  The court overruled the objection, responding, "It's my view that based on the circumstances of this situation, that such a condition as I have set forth . . . is necessary and well within my discretion."  Id.

14

would certainly be reasonable, there are First Amendment implications for a ban that extends to explicit material involving adults. We assume that the condition was specifically intended to include explicit material involving adults because such material cannot <u>legally</u> involve children, and the statutorily mandated conditions of supervised release require Voelker to comply with those laws. . . . However, nothing on this record suggests that sexually explicit material involving only adults contributed in any way to Voelker's offense, nor is there any reason to believe that viewing such material would cause Voelker to reoffend.

<u>Id.</u> To this end, we added that even if the district court's restriction "has some unexplained rehabilitative, deterrent or penological purpose . . . it should have been apparent that any such purpose had to be balanced against the serious First Amendment concerns endemic in such a restriction." <u>Id.</u> (citing <u>United States v. Loy</u>, 191 F.3d 360 (3d Cir. 1999), and <u>United States v. Loy</u>, 237 F.3d 251, 267 (3d Cir. 2001)).

As was true of the district court in <u>Voelker</u>, it appears the district court here failed to balance the "serious First Amendment concerns endemic in such a restriction" against any supposed rehabilitative, deterrent or penological purpose served by the same. There can be no doubt that the restriction is plainly problematic in that it "sweeps within its reach some legal adult pornography as well as illegal child pornography." <u>Voelker</u>, 489 F.3d at 153. Further, and more disturbingly, the restriction arguably also sweeps within its reach materials that may not fairly be deemed pornography under any standard such as completely appropriate descriptions in novels written for the legitimate general literary market of intimate private conduct of married couples.

Given the above, we will vacate the district court's special condition prohibiting

15

Kenrick from possessing sexually explicit materials during the term of his supervised release.[10] Further, with respect to the term of Kenrick's supervised release itself, we note that "[o]ur discussion of the propriety of the conditions imposed . . . applies to duration of the term with equal force." Id. at 144. While we are mindful that the 2004 Sentencing Guidelines expressly provide for the possibility of a lifetime term of supervised release for Kenrick's offense, inasmuch as the district court did not provide adequate reasons for its decision,[11] we also will vacate this provision of the sentence and remand the case so that the court may reconsider this issue during Kenrick's resentencing as well.

B.      Polygraph examinations

Kenrick claims next that in requiring him to submit to polygraph examinations for purposes of determining compliance with the conditions of his supervised release, the district court failed to establish how such a condition "enhances" either his supervised release or rehabilitation. Absent the establishment of such benefits, Kenrick concludes that there is no basis for the condition. For the following reasons, we believe that Kenrick's position is without merit.

In United States v. Lee, 315 F.3d 206, 217 (3d Cir. 2003), we found that a district

---

[10]We do not suggest that the court may not impose a narrower condition relating to pornography consistent with this opinion.

[11]As our previous quotation from Kenrick's sentencing hearing makes clear, the district court offered little more than a paraphrasing of the section 3553(a) factors as justification for the sentence it imposed. See lines 179-204. We believe that this explanation is inadequate. See Cooper, 437 F.3d at 329.

16

court did not abuse its discretion in requiring a defendant to submit to random polygraph examinations as a condition of his supervised release. See also United States v. Warren, 76 Fed. Appx. 432, 436 (3d Cir. 2003) (finding district court did not abuse its discretion in imposing a random polygraph examination term as a condition of defendant's release where defendant pleaded guilty to one count of receiving child pornography through interstate computer transmission).[12] Like Kenrick, the defendant in Lee pleaded guilty to a sex offense – namely, transportation of child pornography, possession of child pornography, and enticing a minor by computer to engage in sex. Lee, 315 F.3d at 209. Accordingly, as a condition of his supervised release, the district court ordered that the defendant "submit to random polygraph examination, examination to be administered by a certified examiner, at the direction and discretion of the United States Probation Officer." Id. at 210 (internal quotations and citation omitted).

The defendant appealed, but we affirmed the sentence as we held that "the polygraph condition is reasonably related to the protection of the public, as well as the rehabilitation of the appellant." Id. at 217. Specifically, we explained that "polygraph testing could be beneficial in enhancing the supervision and treatment of Lee." Id. Additionally, we noted that "the polygraph condition does not involve greater deprivation of [Lee's] liberty than is reasonably necessary to achieve the purposes of protecting the public and rehabilitating the offender" and "[s]ince [Lee] is already directed to report

_____

[12]We realize that Warren is not precedential, but we nevertheless find it to be instructive.

17

periodically to the probation officer and provide truthful answers after he is released from imprisonment . . . the additional requirement that Lee undergo polygraph testing does not place a significantly greater demand on him." Id. Our reasoning in Lee applies with equal force in this matter.

Notwithstanding the above, Kenrick protests that, contrary to Lee and Warren, the district court here ordered random polygraph examinations to ensure compliance with the specific condition that he receive mental health treatment generally, and sex offender treatment specifically, rather than the terms of supervised release overall. See Warren, 76 Fed. Appx. at 436 (noting that in Lee "we emphasized that 'the scope of the [polygraph] questioning should be limited to that which relates to the supervision, monitoring, and treatment of the appellant'" and that "[t]he [condition] at issue here does so by providing that 'said polygraph examinations shall relate only to the defendant's compliance or non-compliance with the conditions of supervised release'") (internal citation omitted). Kenrick contends that because it is not clear that compliance with this specific condition only can be ensured through polygraphs (as opposed to attendance records, for example), the district court erred in imposing the condition.

We disagree, noting the following two points. First, as Lee made clear, polygraph examinations are plainly a proper means by which the district courts may increase the probability that a defendant will comply with the conditions of his supervised release. Even though there might be less restrictive – or, from Kenrick's perspective, less

offensive – methods available, such as attendance records, our observation on this point is not negated.[13]  Second, and perhaps more importantly, inasmuch as the polygraph conditions we upheld in Lee and Warren were arguably more extensive than that imposed here, Kenrick's argument necessarily must fail.  We thus conclude the district court did not abuse its discretion in requiring Kenrick to submit to random polygraph examinations as a condition of his supervised release.

C.    DNA sample submissions

Kenrick claims finally that the district court's order that he submit DNA samples at the direction of his probation officer as a condition of his supervised release is an unconstitutional search in violation of the Fourth Amendment.[14]  As Kenrick himself recognizes, however, our precedent forecloses this argument.

In United States v. Sczubelek, 402 F.3d 175, 184 (3d Cir. 2005), cert. denied, 126 S. Ct. 2930 (2006), utilizing a totality of the circumstances test, we held that "the taking of a DNA sample from an individual on supervised release is not an unreasonable search."  To this end, we explained that, "[t]he government's interest in building a DNA

_____

[13]To this end, we point out as well that the "polygraph condition may provide an added incentive for [appellant] to furnish truthful testimony to the probation officer." Lee, 315 F.3d at 213.

[14]The DNA Analysis Backlog Elimination Act of 2000, 42 U.S.C. §§ 14135-14135e, mandates the collection of DNA samples from prisoners, parolees, and individuals on probation and supervised release who have committed certain qualifying offenses. Kenrick pled guilty to a violation of 18 U.S.C. § 2423(b), a qualifying offense under section 14135a(d)(1).

19

database for identification purposes, similar to its interest in maintaining fingerprint records, outweighs the minimal intrusion into a criminal offender's diminished expectation of privacy." Id. at 177. Under Internal Operating Procedure 9.1, "It is the tradition of this court that the holding of a panel in a precedential opinion is binding on subsequent panels. Thus, no subsequent panel overrules the holding in a precedential opinion of a previous panel." Rather, "Court en banc consideration is required to do so." Id. Put another way, this panel is bound by our prior decision in Sczubelek unless and until either the Supreme Court or we sitting en banc overrule that case.

Notwithstanding the above, Kenrick emphasizes that this is "a cutting-edge issue upon which jurists have disagreed" and "en banc or Supreme Court review is possible." Appellant's br. at 30. Although not relevant to our analysis, it bears noting that while courts of appeals have divided as to the appropriate test to apply when addressing constitutional challenges to state and federal DNA-indexing statutes, see Sczubelek, 402 F.3d at 184, none to date have found such statutes to be unconstitutional. But see United States v. Weikert, 421 F. Supp.2d 259, 270 (D. Mass. 2006) (finding defendant was "likely to succeed on the merits of his claim that the DNA Act is a violation of the Fourth Amendment as applied to individuals on supervised release without any individualized suspicion, whether or not a court finds that the government has a special need").

## V. CONCLUSION

For the foregoing reasons, we will vacate the judgment of conviction and sentence entered November 10, 2005, insofar as it imposes a lifetime term of supervised release and prohibits Kenrick from possessing sexually explicit materials, and will remand for resentencing.

———