

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-7-2003

# USA v. Lee

Precedential or Non-Precedential: Precedential

Docket 01-4485

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Lee" (2003). *2003 Decisions.* Paper 829.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/829

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed January 7, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4485/4496

UNITED STATES OF AMERICA

v.

ALBERT M. LEE,

Appellant

Appeal from the United States District Court
for the District of Delaware
(D.C. Criminal Action No. 00-cr-00024-1 &
No. 00-cr-00028-1)
District Judge: Honorable Gregory M. Sleet

Argued on October 17, 2002

Before: GREENBERG, ROTH, Circuit Judges and
WARD,* District Judge

(Opinion filed January 7, 2003)

Christopher S. Koyste (Argued)
Assistant Federal Public Defender
704 King Street, Suite 110
Wilmington, DE 19801

Attorney for Appellant

_____

* The Honorable Robert J. Ward, United States District Judge for the
Southern District of New York, sitting by designation.

Colm F. Connolly
United States Attorney
Edmond Falgowski
Leonard P. Stark (Argued)
Assistant United States Attorneys
Chase Manhattan Centre
1201 Market Street, Suite 1100
P.O. Box 2046
Wilmington, DE 19899-2046

Attorneys for Appellee

OPINION OF THE COURT

WARD, District Judge:

This is an appeal from the district court's judgment
imposing a condition of supervised release, which requires

appellant to submit to random polygraph examinations at the discretion of the probation officer. Because we conclude that the condition does not violate appellant's Fifth Amendment right and the district court did not abuse its discretion in imposing the polygraph condition, we affirm the judgment of the district court.

I. BACKGROUND

Appellant Albert Lee was arrested on February 15, 2000 for knowingly transporting child pornography by computer. On March 14, 2000, he was charged in a two-count indictment, alleging transportation of child pornography, in violation of 18 U.S.C. S 2252A(a)(1) & (b)(1), and possession of child pornography, in violation of 18 U.S.C. S 2252A(a)(5)(B) & (b)(2). The Grand Jury returned a second indictment on March 28, 2000, charging Lee with travel for purposes of having sex with a minor, in violation of 18 U.S.C. S 2423(b), and enticing a minor by computer to engage in sex, in violation of 18 U.S.C. S 2422(b). On April 11, 2000, the Grand Jury returned a three-count indictment, superceding the original indictment returned on March 14, 2000. The superceding indictment charged Lee with transportation of child pornography; possession of

2

child pornography; and enticing a minor by computer to engage in sex.

On November 30, 2000, pursuant to a plea agreement, Lee pleaded guilty to all three counts in the superceding indictment returned on April 11, 2000, and Count One of the indictment returned on March 28, 2000 (travel for purposes of having sex with a minor).

At the time Lee committed the offenses involved, he was over thirty years of age. He met female minors via an Internet Relay Chat channel entitled "#0!!!!!!!!!GirlsandOlderGuys." Through online conversations, Lee met a fifteen-year old girl; he later met her in person and engaged in sexual acts with her. He also attempted to meet other minors online in order to induce them to perform sexual acts with him. In addition, Lee transmitted child pornography online.

The district court committed Lee to the Federal Correctional Institution in Petersburg, Virginia for a psychological evaluation to assist the court in sentencing. An evaluation was conducted on May 15, 2001 and a report was mailed to the court on May 21, 2001. On July 25, 2001, the district court advised the parties that it was considering an upward departure with respect to Lee's sentence. Lee had Doctor Timothy P. Foley perform a psychological evaluation on September 14, 2001, the results of which were provided to the court. The district court informed the parties on October 31, 2001 that it was still considering an upward departure.

On the sentencing date, December 11, 2001, the parties executed an Addendum to Memorandum of Plea Agreement, stipulating to increase the offense level for transportation of child pornography by two points to Level 23. Inasmuch as appellant's Criminal History Category was I, the Guideline Sentencing Range was 46 to 57 months. Lee was sentenced to 57 months of incarceration on Count One, and 46 months each on Counts Two and Three of the superceding indictment and Count One of the indictment returned on March 28, 2000, all terms to be served concurrently. Upon release from imprisonment, Lee was to be on supervised release for a term of three years. The court set additional

3

conditions of supervision, one of which was the following: "The defendant shall submit to random polygraph examination, examination to be administered by a certified examiner, at the direction and discretion of the United States Probation Officer." (Appendix at A-8). Lee appeals this particular condition of supervised release. 1

II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. S 3231, which grants the district courts jurisdiction over all offenses against the laws of the United States. We have jurisdiction to review the district court's judgment pursuant to 28 U.S.C. S 1291 and 18 U.S.C. S 3742(a). The district court's decision to impose conditions of supervised release is reviewed for abuse of discretion. United States v. Loy, 237 F.3d 251, 256 (3d Cir. 2001).

_____

1. Although Lee is not appealing the other conditions of supervised release, they include, inter alia, the following:

> 4. The defendant shall participate in a mental health treatment program which may include urine testing at the direction and discretion of the probation officer.
>
> 5. The defendant shall not own or use a personal computer with Internet access in his home, except for work, nor shall he possess any other electronic device that is capable of transmitting child pornography.
>
> 6. The defendant shall be prohibited from having in his possession any type of obscene materials.
>
> 7. The defendant is to have no unsupervised contact with a juvenile under the age of 18 years old, and is prohibited from patronizing any establishments or events frequented by minors . . . .
>
> 8. The defendant shall register as a convicted sex offender with local and state authorities as required by state law. . . . (Appendix at A-8).

4

III. DISCUSSION

A. Constitutionality of the Polygraph Condition

1. Fifth Amendment Privilege Against Self-
       Incrimination

Appellant argues that the polygraph condition of
supervised release violates his Fifth Amendment right due
to the potential for self-incrimination. According to Lee, the
examiner could ask the appellant about prior uncharged
offenses or other potentially incriminating conduct. Thus,
Lee claims that the mandatory polygraph examination
would place him in a situation in which he would be
compelled to incriminate himself by providing the
government with information that could be used against
him. The government, on the other hand, contends that the
Fifth Amendment provides no protection against answering
questions when the answers pose no realistic threat of
future criminal prosecution, even if the answers could serve
as the basis for a revocation of supervised release for an
offense on which appellant has already been convicted.

In pertinent part, the Fifth Amendment provides that no
person "shall be compelled in any criminal case to be a
witness against himself." The Supreme Court addressed the
issue of the Fifth Amendment as it relates to a probationer
in Minnesota v. Murphy, 465 U.S. 420 (1986), and
reiterated that the Fifth Amendment privilege applies not
only at criminal trials, but "in any other proceeding, civil or
criminal, formal or informal, where the answers might
incriminate [the defendant] in future criminal proceedings."
Id. at 426 (citation omitted).

In Murphy, the Court examined the level of compulsion
inherent in the relationship between a probation officer and
a defendant.2 According to the Court, the general obligation
to appear at a probation interview and answer questions
truthfully did not in and of itself transform the defendant's
otherwise voluntary statements into compelled ones. Thus,
the probationer's answers were not compelled within the
meaning of the Fifth Amendment unless the probationer
was "required to answer over his valid claim of the

---

2. Murphy, however, did not involve a polygraph condition.

5

privilege." Id. at 427. The Court made clear, however, that
the state could not "constitutionally carry out a threat to
revoke probation for the legitimate exercise of the Fifth
Amendment privilege." Id. at 438.

The issue in Murphy was whether the release conditions
merely required the defendant to appear at the probation
interview and discuss matters relevant to his probationary
status or whether they went further and required the

defendant "to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent." Id. at 436. After a careful analysis, the Court held that the state "did not attempt to take the extra, impermissible step" of compelling the probationer to incriminate himself. Defendant's Fifth Amendment privilege, therefore, was not self-executing. Id. As such, defendant's failure to invoke the privilege against self-incrimination, absent compulsion, constituted a waiver of his Fifth Amendment right.

In the instant case, appellant argues that the added factor of the polygraph condition would substantially increase the coercive nature of the probation proceeding.[3] Specifically, Lee claims that his situation differs from that in Murphy because (1) he would be physically restrained by being attached to a polygraph machine; and (2) a former police officer would be administering the polygraph test.[4] Thus, appellant contends that these additional factors

_____

3. A polygraph test typically measures a person's physiological reactions to various questions asked by the examiner. The physiological signals include blood pressure, perspiration, and respiration. See United States v. Scheffer, 523 U.S. 303, 313-14 n.9 (1998). Three categories of questions are commonly asked of probationers who are attached to polygraph machines: "direct accusatory questions concerning the matter under investigation, irrelevant or neutral questions, and more general 'control' questions concerning wrongdoing by the subject in general." Id. The polygraph examiner determines the person's truthfulness by comparing the physiological responses to each set of questions. Id.

4. At the sentencing hearing, Probation Officer Durkin indicated to the court that this was the first time that the probation department would be implementing the polygraph condition and that it was planning on utilizing a former Delaware State Police Officer to perform the polygraph examinations. (Appendix at A-66).

would, in effect, require him to choose between making incriminating statements and jeopardizing his liberty by refusing to answer questions.

We do not find that these additional factors bring Lee's sentence to the level where it is likely to compel him "to be a witness against himself." See McKune v. Lile, 122 S. Ct. 2017, 2026 (2002). With respect to the claim that appellant would be physically restrained by being attached to the polygraph machine, we note that should Lee choose to terminate the interview and exit the room while being questioned, he may do so by having the machine detached from him in a matter of moments. If appellant feels obligated or compelled to stay through the end of the proceeding, we are not persuaded that this differs in any significant way from an ordinary probation interview at which the probationer may feel that same obligation. As to Lee's claim regarding the former police officer administering the polygraph test, he or she would have no more power to

arrest or restrain the appellant than any other citizen. Therefore, Lee's argument that the polygraph test converts his probation interview into a custodial situation in which his testimony is compelled must fail, as the presence of a polygraph machine and a former police officer do not constitute compulsion for Fifth Amendment purposes.

The polygraph condition also does not violate Lee's Fifth Amendment right because the condition does not require him to answer incriminating questions. Cf. Owens v. Kelley, 681 F.2d 1362, 1369 (11th Cir. 1982) (holding that the condition requiring probationer to submit to "Psychological Stress Evaluation" examinations did not violate his constitutional rights because it did not stipulate that he must respond to incriminating questions). There is no evidence that Lee's ability to remain on probation is conditional on his waiving the Fifth Amendment privilege with respect to future criminal prosecution. See Murphy, 465 U.S. at 437. In fact, the prosecutor stipulated that "the failure of a probationer to pass a polygraph examination, in and of itself, likely would not result in a finding of a supervised release violation." (Appendix at A-70). The government also indicated that "[t]he conduct that could result in revocation and a return to prison are failure to

7

comply with the other conditions of release (which a probation officer may learn of from a polygraph examination) or failure to submit to a polygraph test or to answer questions (other than those within the scope of the privilege against self-incrimination) truthfully."5 (Gov't Br. at 34). Thus, if a question is asked during the polygraph examination which calls for an answer that would incriminate appellant in a future criminal proceeding, Lee retains the right to invoke his Fifth Amendment privilege and remain silent.

An issue arises, however, as to whether the polygraph test may compromise the appellant's right to remain silent. For example, even though Lee may verbally assert his Fifth Amendment privilege, the polygraph machine may indicate that he is not being truthful based on his physiological response. We note that if appellant invokes his Fifth Amendment privilege, and his involuntary physiological reaction is recorded by the polygraph sensors, the polygraph recording should not be used to justify any action by the probation department different than what normally would follow from the invocation of the Fifth Amendment in the context of a probation interview.

As to questions that do not pose a realistic threat of a future criminal prosecution, the intrusion into the area of self-incrimination when undergoing a polygraph test is no greater than the requirement that the probationer answer truthfully at all other times during the probation inquiry. A probationer may not refuse to answer a question just because his answer would disclose a violation of probation; rather, a probationer may only invoke his privilege against

self-incrimination if a truthful answer would expose him to a prosecution for a crime different from the one on which he was already convicted. Murphy, 465 U.S. at 435-36 n.7.

The Fifth Amendment, therefore, is not infringed upon when a person on supervised release is asked during the polygraph examination about his compliance with a release

---

5. If, at a later date, the government seeks to revoke appellant's supervised release based on his assertion of the Fifth Amendment privilege, that matter may be revisited by the court having jurisdiction at that time.

condition, if violation of that condition could not serve as the basis for a future criminal prosecution. For example, the examiner may ask Lee whether he had unsupervised contact with minors or had used the internet, without running afoul of the Fifth Amendment. Such an inquiry relates to Lee's compliance with release conditions and does not involve conduct that by itself would be criminal. Thus, appellant's Fifth Amendment right is not implicated with respect to questions that do not pose a threat of future criminal prosecution.

## 2. Is the Polygraph Condition Unnecessary and Overly Burdensome?

Appellant also contends that the polygraph condition is unnecessary and overly burdensome because the results of the examination are not likely to be admissible in court. According to Lee, many courts do not admit polygraph results into evidence because there is no consensus that they are reliable. In addition, Lee asserts that the polygraph condition is unnecessary because he is free to invoke his Fifth Amendment privilege and refuse to answer any questions that may incriminate him.

We find that the polygraph condition is neither unnecessary nor overly burdensome. The Fifth Amendment allows a person to invoke his privilege against self-incrimination only if the answers to the questions create a threat of future criminal prosecution. A polygraph examiner, however, may still ask other questions that pertain to appellant's compliance with supervised release conditions without implicating the Fifth Amendment. Thus, with regard to the questions that do not fall within the scope of the privilege, the polygraph condition may provide an added incentive for Lee to furnish truthful testimony to the probation officer. Such purpose would assist the officer in his or her supervision and monitoring of the appellant.

With respect to the issue of the admissibility of the polygraph result at trial, we note that this Court has not adopted a per se exclusionary rule regarding polygraph evidence. See, e.g., United States v. Johnson, 816 F.2d 918, 923 (3d Cir. 1987) (stating that evidence concerning a

polygraph examination may be introduced at trial to rebut

an assertion of coerced confession).[6] In addition, it is not clear that polygraph evidence will be inadmissible at a revocation hearing, since the Federal Rules of Evidence do not apply at a revocation hearing. See U.S.S.G. S 6A1.3; Fed. R. Evid. 1101(d)(3); see also United States v. Frazier, 26 F.3d 110, 111 (11th Cir. 1994); United States v. Portalla, 985 F.2d 621, 622 (1st Cir. 1993). At this stage, we decline to rule on the issue of the admissibility of polygraph evidence at a trial or revocation hearing because, even assuming arguendo that the polygraph evidence is inadmissible, the polygraph result may still be used by the probation officer to enhance supervision and treatment of the releasee. As such, the polygraph condition is not unnecessary.

Moreover, we find that the polygraph condition does not impose a significantly greater demand on appellant than that placed on any other probationer. When Lee is released from imprisonment, he will be directed to report periodically to a probation officer and provide truthful answers to the officer's inquiries. (Appendix at A-7). The additional requirement that Lee be subject to polygraph testing does not substantially increase the burden on him. Accordingly, the polygraph test is not overly burdensome.

_____

6. Since the Supreme Court's decision in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 588-89 (1993) (holding that so long as expert testimony qualifies as reliable evidence under Fed. R. Evid. 702, it may be admissible even if it is not generally accepted in the relevant scientific community), some district courts have found polygraph evidence admissible at trial. See, e.g., United States v. Crumby, 895 F. Supp. 1354, 1358-63 (D. Ariz. 1995) (finding polygraph evidence admissible because given the narrow purposes, it was sufficiently reliable); United States v. Galbreth, 908 F. Supp. 877, 878-95 (D.N.M. 1995).

However, some of the other circuit courts that have addressed this issue have ruled against admitting polygraph evidence at trial. See, e.g., United States v. Lea, 249 F.3d 632, 639-40 (7th Cir. 2001) (stating that the district court did not abuse its discretion in excluding polygraph evidence because the expert's application of the technique was not reliable); United States v. Benavidez-Benavidez , 217 F.3d 720, 725 (9th Cir. 2000) (stating that the district court may exclude polygraph evidence as unduly prejudicial under Fed. R. Evid. 403).

3. Is the Polygraph Condition Void For Vagueness?

Lee contends that the polygraph condition is void for vagueness because it leaves too much discretion to the probation officer. According to Lee, the polygraph condition does not inform him of the type of examination to which he will be subject, what will constitute a violation of

supervised release, or whether he will bear the expense of paying for the test.

In United States v. Loy, 237 F.3d 251, 262 (3d Cir. 2001), we held that a condition of supervised release violates due process and is void for vagueness if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." See also United States v. Schave, 186 F.3d 839, 843 (7th Cir. 1999) ("A condition of supervised release is unconstitutionally vague if it would not afford a person of reasonable intelligence with sufficient notice as to the conduct prohibited.").

As noted previously, the polygraph condition in the instant case reads as follows: "The defendant shall submit to random polygraph examination, examination to be administered by a certified examiner, at the direction and discretion of the United States Probation Office." (Appendix at A-8). We do not believe that this condition is vague. It simply presents the ordinary requirement for Lee to appear at a probation interview and answer questions posed by the probation officer, with the addition of the use of the polygraph machine. A person of ordinary intelligence can understand that the condition directs him to answer questions the probation officer considers appropriate to ask, subject to his Fifth Amendment right to refuse to answer questions that may incriminate him in a future criminal proceeding.

Appellant, nevertheless, claims that the condition is vague because the subject matter of the questioning was not limited in scope. Although the district court did not explicitly define the scope of the questioning on the judgment itself, we note that at the sentencing hearing, the court expressed that the polygraph condition "is a tool . . . used within a totality of other tools to assist Probation in

the conduct of its supervision." (Appendix at A-67). As such, the scope of the questioning should be limited to that which relates to the supervision, monitoring, and treatment of the appellant. See also United States v. Wilson, No. 98-5373, 1998 WL 939987, at *3 (6th Cir. Dec. 22, 1998) (stating that polygraphs are "tools to help the probation officer monitor defendant's rehabilitation and compliance with release conditions"); United States v. Ebihara, No. 01 Cr. 225-01, 2002 WL 432378, at *3 (S.D.N.Y. Mar. 20, 2002) (ordering defendant to submit to polygraph examinations in order "to assist in treatment, planning, and case monitoring").

Furthermore, the fact that the district court did not specify who will bear the expense of paying for the polygraph examination does not make the condition void for vagueness. Nevertheless, consistent with other jurisdictions, we will assume that the appellant is required to contribute to the costs based on his ability to pay. See,

e.g., Ebihara, 2002 WL 432378, at *3.

B. Discretion of the District Court

1. Fed. R. Crim. P. 32(c)(1)

In addition to the Fifth Amendment claim, appellant contends that the imposition of the polygraph condition constitutes an abuse of discretion because the district court failed to warn him in advance that it was considering such a condition and did not allow additional briefing on this issue at the sentencing hearing. The government, on the other hand, argues that the court imposed the polygraph condition based upon the Federal Correctional Institution's psychological evaluation ("FCI's evaluation"). The FCI's evaluation contained recommendations, including the following special conditions:

> It is recommended a restrictive supervision program be implemented. Mr. Lee should be required to register as a sex offender, not be allowed contact with his victims, have no contact with persons under the age of 18, not own or operate a personal computer or other devices that allows Internet access, and should not be housed in an area where minors congregate. It is also recommended Mr. Lee not hire any minors to perform

12

> household chores or yard work, random searches of his residence be conducted for the presence of sexual risk factors, and he be administered for frequent polygraph examinations. (Appendix at B-5) (emphasis added).

According to Fed. R. Crim. P. 32(c)(1), at sentencing, "the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence . . . ." We addressed this Rule in United States v. Nappi, 243 F.3d 758, 764 (3d Cir. 2001), and held that counsel for the defendant and the government must be "provided with a meaningful opportunity to address the information at issue." (emphasis in original).

In Nappi, the district court relied on the state presentence report ("PSR"), as well as the federal PSR, in sentencing the defendant. The state PSR, however, was not provided to the defense counsel prior to sentencing. As a result, we held that where the district court intends to rely on a document in addition to the federal PSR, "a meaningful opportunity to comment requires the Court, in accordance with Rule 32(c)(1), to provide a copy of the document to counsel . . . within a sufficient time prior to the sentencing hearing to afford them with a meaningful opportunity to comment on it at sentencing and, depending on the document, prepare a response or contest it." Id.

Nappi, however, is inapposite to the case at bar. Here, it

appears that the district court relied upon the FCI's evaluation in sentencing the appellant.7  Moreover, the report was made available to Lee's counsel prior to the sentencing date. In fact, after the FCI's evaluation was

---

7. Although appellant asserts that the FCI's evaluation was not relied upon by the district court at sentencing, we believe otherwise. The district court initially ordered that the psychological evaluation be conducted "to assist the Court in sentencing" and that the "pertinent results of the study" and "whatever recommendations the Bureau finds appropriate" be provided to the court. (Appendix at B-1). All of the recommendations listed in the FCI's evaluation, (Appendix at B-5), were adopted in the district court's judgment as additional standard conditions of supervision, (Appendix at A-8).

13

conducted, appellant's counsel had Lee examined by an independent psychologist, Timothy Foley, Ph.D., on September 14, 2001. It therefore appears that appellant was aware of the weight which the court would give to the FCI's evaluation, and attempted to counter it.

Nevertheless, Lee argues that the district court abused its discretion because (1) the probation officer failed to mention the polygraph condition in the Presentence Report, and (2) the district court refused to allow additional briefing from counsel on this issue at the sentencing hearing. We do not find that the district court's actions amount to an abuse of discretion. Even though the probation officer failed to mention the polygraph condition in the Presentence Report, appellant's counsel was provided with the FCI's evaluation--including its recommendations--prior to the sentencing date, and utilized the opportunity to provide the court with an alternate evaluation.8 Also, even if the district court had allowed additional briefing on the issue of polygraph testing, we do not believe that it would have affected the court's decision to impose the polygraph condition. As such, the court's refusal to permit additional briefing did not prejudice Lee. Cf. Nappi, 243 F.3d at 768- 72 (upholding the sentence because even though the district court violated Fed. R. Crim. P. 32, it did not affect appellant's substantial rights, so as to warrant plain error relief).

2. Polygraph Testing as a Condition of Supervised
      Release

With respect to the issue of whether the district court abused its discretion in imposing the polygraph condition, we have held that the sentencing court may order a condition of supervised release to the extent that it: (1) reasonably relates to the factors set forth in the statute containing the sentencing guidelines, 18 U.S.C.S 3553(a)(1)

---

8. Lee argues that appellate reliance on the FCI's evaluation would be erroneous, since the issue of the risk of recidivism is contested. In

referencing the FCI's evaluation, however, we are not making a
determination on the merits of the report. Rather, we are pointing out
that the FCI's evaluation was provided to appellant prior to the
sentencing date.

14

& (2)(B)-(D); and (2) involves no greater deprivation of
liberty than is reasonably necessary to achieve the
deterrence, public protection and/or correctional treatment
for which it is imposed. 18 U.S.C. S 3583(d)(1) & (2); United
States v. Loy, 191 F.3d 360, 370 (3d Cir. 1999). In
imposing conditions, the court may consider: (a) the nature
and circumstances of the offense and the history and
characteristics of the defendant; and (b) the need for the
condition to deter future criminal conduct, protect the
public, and provide the defendant with necessary training,
medical care, or other correctional treatment. 18 U.S.C.
S 3553(a)(1) & (2); see also Loy, 191 F.3d at 370; United
States v. Loy, 237 F.3d 251 (3d Cir. 2001).

We find that the polygraph condition is reasonably
related to the protection of the public, as well as the
rehabilitation of the appellant. The polygraph testing could
be beneficial in enhancing the supervision and treatment of
Lee. See, e.g., Wilson, 1998 WL 939987, at *3 (stating that
polygraphs are "tools to help the probation officer monitor
defendant's rehabilitation and compliance with release
conditions"); Owens v. Kelley, 681 F.2d 1362, 1370 (11th
Cir. 1982) (stating that the polygraph test may act to deter
the probationer "from violating the terms of his probation
by instilling in him a fear of detection"); Ebihara, 2002 WL
432378, at *3 (requiring defendant to submit to polygraph
examinations in order "to assist in treatment, planning, and
case monitoring"). Moreover, the polygraph condition does
not involve greater deprivation of appellant's liberty than is
reasonably necessary to achieve the purposes of protecting
the public and rehabilitating the offender. Since appellant
is already directed to report periodically to the probation
officer and provide truthful answers after he is released
from imprisonment, (Appendix at A-7), the additional
requirement that Lee undergo polygraph testing does not
place a significantly greater demand on him. Accordingly,
the district court did not abuse its discretion when it
imposed the polygraph condition.

IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of
December 11, 2001.

15

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit