# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2415

_____

United States of America

*Plaintiff - Appellee*

v.

Reynaldo Sanchez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: April 11, 2022
Filed: August 15, 2022

_____

Before LOKEN, ARNOLD, and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

Reynaldo Sanchez pleaded guilty to transportation of child pornography in violation of 18 U.S.C. §§ 2252A(a)(1) and (b)(1). At sentencing, the district court[1] determined an advisory guidelines sentencing range of 108 to 135 months in prison,

_____

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

considered the 18 U.S.C. § 3553(a) sentencing factors, and imposed a sentence of 96 months imprisonment and 20 years of supervised release. The court imposed seven special conditions of supervised release including, over Sanchez's timely objection, that he "submit to periodic polygraph testing at the discretion of the probation office as a means to ensure that he is in compliance with the requirements of his supervision or treatment program." Sanchez appeals his sentence, presenting as the issue for review whether the district court abused its discretion in "requiring Mr. Sanchez to submit to periodic polygraph testing at the discretion of the U.S. Probation Office." We affirm.

**I.**

After Homeland Security investigators traced twenty images of child pornography to Sanchez's Twitter account, law enforcement conducted a warrant search of his home in September 2019. A forensic search of his phone uncovered sixty images of child pornography and two hundred images of child erotica of children aged five to fifteen years old. Investigators also found chat logs from 2017 and 2019 in which Sanchez requested sexually explicit pictures of females of an unknown age and described his fantasies of sexual relations with children.

During the warrant search, Sanchez waived his <u>Miranda</u> rights, confirmed the Twitter account was his, and admitted using Twitter to search for child pornography, saving images to his phone, and sending images to others. Sanchez said he knew the search was related to child pornography because agents had previously conducted a warrant search of his home for child pornography. Paragraph 30 of the Presentence Investigation Report referred to that statement: "The [earlier] case was referred to the Washington County Prosecutor's Office; however, no charges were filed."

At sentencing, the district court inquired regarding Paragraph 30. In response, the government advised that Homeland Security agents conducted a warrant search

of Sanchez's home in 2015 based on an IP address that was participating in child pornography via a peer-to-peer file sharing program. After Sanchez admitted downloading child pornography of children as young as three to five years, twelve images and ten videos were found on his device. The case was referred to the county prosecutor, but the state prosecutor's office ultimately declined to prosecute. The district court advised that the 2015 incident "has no impact on the guideline calculation [but] it's a relevant [§ 3553(a)] consideration":

> To the extent one needed a wake-up call that it was wrong to view images of child pornography, Mr. Sanchez, that was your wake-up call. And the Court finds it very disturbing that you would waste a second chance. The Court is concerned that the only thing that not pursuing prosecution in 2015 has done is to make you a better perpetrator. I noticed that the images [here] were only on the phone. I don't know if you thought that perhaps if it was on your phone, you couldn't be traced.

After hearing argument on Sanchez's objection to the polygraph testing special condition, the district court explained at length its decision to impose this special condition. The court referred to a government report explaining why polygraph testing is recognized as an appropriate tool for sex offender management:

> [T]his Court does not read that report to say that polygraph testing is appropriate or should be required in every sex offense case. Rather . . . the condition is recommended to be imposed on sex offenders who, one, are hands-on sex offenders, or, two, are at risk or have predispositions towards becoming hands-on offenders in the future. And . . . it certainly could be appropriate in situations where an offender has been dishonest, has lied, has taken affirmative measures to conceal or deceive detection in the past.

The court found Sanchez's fantasy chatting "very disturbing" because it raises concern that Sanchez, though not in the past a hands-on offender, "was on a pathway

towards acting out on his fantasies." Given that risk of hands-on reoffending, and the fact "he was not deterred when confronted by law enforcement in 2015," the court found that polygraph testing is "an appropriate tool for probation to have in its arsenal."

## II.

Our court has published many opinions reviewing challenges to special conditions of supervised release imposed in sentencing sex offenders. Our standards for this review are well established. Procedurally, the district court "must conduct an inquiry on an individualized basis, looking at the specific facts of the defendant's criminal history and his particular offenses, and make a particularized showing of the need for the condition in each case." United States v. Springston, 650 F.3d 1153, 1156 (8th Cir. 2011) (cleaned up), vacated on other grounds, 566 U.S. 931 (2012). "District courts are encouraged to provide an explanation of how the conditions satisfy the requirements of [18 U.S.C.] § 3583(d), but where the basis for the special conditions can be discerned from the record, reversal is not required." United States v. Simpson, 932 F.3d 1154, 1156 (8th Cir. 2019), cert denied,140 S. Ct. 826 (2020); see United States v. Smith, 960 F.3d 1107, 1109 (8th Cir. 2020).

When the district court has conducted an appropriate individualized inquiry, we deferentially review the special condition for abuse of discretion. "District courts have wide discretion to impose conditions of supervised release so long as they are reasonably related to (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the deterrence of criminal conduct; (4) the protection of the public from further crimes of the defendant; and (5) the defendant's educational, vocational, medicinal, or other correctional needs." United States v. Muhlenbruch, 682 F.3d 1096, 1102 (8th Cir. 2012) (quotations omitted); see United States v. Wiedower, 634 F.3d 490, 493 (8th Cir. 2011). Our *ad hoc* opinion as to the wisdom of a particular special condition does not outweigh the careful consideration

-4-

of the sentencing judge and the probation officers who will be responsible for supervising the defendant when he has completed his term of imprisonment.

In this case, we review a special condition, polygraph testing, that has been in common use throughout the country. Many of our sister circuits have rejected frontal attacks on this type of special condition, concluding "that polygraph testing may serve salutary purposes in the supervised release context." United States v. Johnson, 446 F.3d 272, 277 (2d Cir.), cert. denied, 549 U.S. 953 (2006), and cases cited. A polygraph test may provide an added incentive to be truthful to the probation officer, which assists supervision and monitoring. Id. Sanchez cites *not one case*, not even a dissenting opinion, expressing a contrary view. Our court has frequently upheld this special condition, including at least one condition virtually identical to the one here at issue. See Simpson, 932 F.3d at 1156. Indeed, polygraph testing special conditions have become so common and widely accepted that, in most of our decisions, the district court did not explain why the condition was appropriate for the defendant being sentenced, but we could discern the basis for the condition from the record and affirmed. See, e.g., Smith, 960 F.3d at 1109; Simpson, 932 F.3d at 1156; United States v. Newell, 915 F.3d 587, 590-91 (8th Cir. 2019); United States v. Thompson, 888 F.3d 347, 351-52 (8th Cir. 2018).

Here, the district court did not procedurally err. It conducted a thorough individualized analysis of the sentence it was imposing. The seven special conditions of supervised release require that Sanchez (5) "participate in a sex offense-specific treatment program," and (6) "submit to periodic polygraph testing . . . to ensure that he is in compliance with the requirements of his supervision or treatment program." In response to Sanchez's timely objection, the court carefully explained why the sentence would include this polygraph testing special condition. Thus, the issue on appeal is limited to whether the court abused its wide discretion to impose reasonable special conditions.

Sanchez acknowledges our precedents affirming polygraph testing requirements for child pornography offenders, but distinguishes those cases as involving polygraph testing imposed as a component of sex-offender treatment, or on a defendant who was dishonest, deceptive, or uncooperative. By contrast, Sanchez argues, he is not a hands-on offender, truthfully admitted his illegal activity to law enforcement, and fully complied with his conditions of pretrial release. Therefore, he posits, a polygraph testing condition is not reasonably related to the § 3553(a) factors and involves a greater deprivation of liberty than is reasonably necessary. But our cases have never limited imposition of polygraph testing to defendants who fall in the categories he describes. This argument fails to suggest an abuse of discretion.

Sanchez argues that our court and others have limited the use of polygraph test results at trial because they can be inaccurate and unreliable. This argument does not apply. In the supervised release context, "polygraph testing is for treatment, not for evidence at trial or sentencing." Smith, 960 F.3d at 1110; see United States v. Lee, 315 F.3d 206, 214 (3d Cir.), cert. denied, 540 U.S. 858 (2003).

Sanchez also argues his other conditions of supervised release "were sufficient to address" the district court's concern over the likelihood of future hands-on offenses, making this condition a greater deprivation of liberty than is reasonably necessary. But his deprivation focus is faulty. The *standard* conditions of supervised release, which the district court imposed here, include obligations that Sanchez report to the probation officer as instructed and "answer truthfully the questions asked by the probation officer." USSG § 5D1.3(c)(1)-(2) and (4). "The additional requirement that [he] be subject to polygraph testing does not substantially increase the burden on him." Lee, 315 F.3d at 214.

Sanchez further argues the special condition is overbroad because it "would permit polygraph examination to be used at the discretion of Probation in an attempt to sniff out potential violations in the ordinary course of its supervision of a

defendant." We disagree. The district court expressly stated that polygraph testing is "not to be used to ensnare people" but is instead "a preventative measure." Thus, the court recognized that polygraph questioning should be limited to issues that relate to "supervision, monitoring, and treatment." Lee, 315 F.3d at 215. The special condition explicitly links the probation officer's discretion to Sanchez's compliance with supervision or his treatment program. "Polygraph testing supports the Sentencing Commission's policy that sex offenders participate in a program for treatment and monitoring." Smith, 960 F.3d at 1110 (citing USSG § 5D1.3(d)(7)(A)). Sanchez "has recourse to the district court if he objects to the direction of the probation office." Thompson, 888 F.3d at 352.

Turning to the district court's reasons for imposing this special condition, Sanchez argues (i) his fantasy chats do not show he is a predator on a pathway to acting out those fantasies, and (ii) the district court placed too much emphasis on his 2015 encounter with law enforcement, which "was not serious enough to merit prosecution or punishment." But this is simply disagreeing with the district court; it does not establish abuse of discretion. The court found that chat transcripts quoted in the PSR graphically describing to others Sanchez's desire for sexual encounters with minors "very disturbing" because they persuaded the court "that he is a person who has predatory thoughts. He is a person who is at risk of committing future hands-on offenses." That finding is not unreasonable. See Wiedower, 634 F.3d at 494 (affirming polygraph condition based in part on defendant's participation in a "fetish chat room"). Regarding the 2015 incident, it strongly supported imposing this special condition for the reasons explained by the district court.

## III.

Polygraph testing, like other special conditions of supervised release, cannot be routinely imposed on all sex offenders. As the district court expressly recognized, it must be warranted by an individualized inquiry into a particular offender's

circumstances.  See Thompson, 888 F.3d at 351-52.  The court carefully made that inquiry.  In light of the widely recognized public benefits of polygraph testing in treating and managing many sex offenders who are on supervised release, the district court did not abuse its discretion in concluding that polygraph testing was "an appropriate tool for probation to have in its arsenal in this case."

Sanchez has not met his burden "to establish that a special condition is unreasonable."  United States v. Deatherage, 682 F.3d 755, 765 (8th Cir. 2012).  The judgment of the district court is affirmed.

_____