**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-1894
_____

UNITED STATES OF AMERICA

v.

TIESHA LASHA HENDERSON,

                  Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 1-17-cr-00011-001)
District Judge: Honorable David S. Cercone

Argued on October 18, 2022

Before: GREENAWAY, JR., MATEY and
ROTH, <u>Circuit Judges</u>

(Opinion filed March 29, 2023)

Samantha Stern        (**ARGUED**)
Office of Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA 15222

        Counsel for Appellant


Adam N. Hallowell   (**ARGUED)**
Laura S. Irwin
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

        Counsel for Appellee

OPINION OF THE COURT

**ROTH**, *Circuit Judge*.


This case presents us with the rare opportunity to clarify conflicting decisions which we have handed down. *United States v. Abreu* and *United States v. Preston*, two cases addressing the career offender enhancement under the U.S. Sentencing Guidelines and the Armed Career Criminal Act, dictate very different sentencing outcomes for defendants

convicted of conspiracy and other inchoate offenses. Tiesha Lasha Henderson appeals the sentence imposed by the District Court, arguing that the District Court plainly erred in following *Preston* and applying the career offender enhancement based on a conviction for conspiracy. We agree. We recognize that *Preston* has been effectively overruled by intervening Supreme Court precedent, and thus we hold that, under Pennsylvania law, conspiracy to commit robbery does not constitute a "crime of violence" for purposes of the career offender enhancement. Therefore, we will vacate Henderson's sentence and remand for resentencing.

## I. BACKGROUND

A grand jury indicted Tiesha Lasha Henderson for possession with intent to distribute 40 grams or more of a mixture and substance containing fentanyl, in violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iv). Henderson pleaded guilty without a plea agreement.

In sentencing Henderson, the District Court applied the career offender enhancement under U.S.S.G. § 4B1.1 and the Armed Career Criminal Act (ACCA), based on findings that (1) Henderson's 2015 Pennsylvania conviction for possession with intent to deliver heroin qualified as a "controlled substance offense," and (2) Henderson's 2005 Pennsylvania conviction for conspiracy to commit robbery qualified as a "crime of violence." In several pre-sentencing filings, including Henderson's sentencing memorandum, Henderson acknowledged being "denominated a 'career offender under U.S.S.G. § 4B1.1'", based on the 2005 conviction for

3

conspiracy to commit robbery.[1] The enhancement increased the applicable Guideline range from 70 to 87 months' imprisonment to 188 to 235 months' imprisonment. Henderson did not challenge the Probation Office's Presentence Report Guideline calculations based on this finding, and the District Court adopted the calculations.

The District Court sentenced Henderson to 120 months' imprisonment, followed by four years of supervised release. The court reduced the term of imprisonment 68 months below the bottom of the range because of Henderson's "mental health issues."[2] The conditions of supervised release included that Henderson "participate in a mental health assessment, and, if appropriate, a mental health treatment program," and "abide by all program rules, requirements and conditions, including submission to polygraph testing to determine if [Henderson] is in compliance with the conditions of release."[3]

At sentencing, Henderson objected to the condition of polygraph testing. The District Court responded by noting that it imposed polygraph testing "all the time" to "[e]nsure the defendant is compliant with all of the requirements, the conditions of supervised release."[4]

Henderson appealed the application of the career offender enhancement and the order requiring submission to polygraph testing. After filing a notice of appeal, Henderson moved to stay the appeal pending *United States v. Harris*, No.

---

[1] Appx. 18, 44.
[2] Appx. 2–3, 70.
[3] Appx. 5.
[4] Appx. 73.

17-1861 (en banc), which presented the question whether Pennsylvania first-degree robbery qualifies as a violent felony under the ACCA. We granted Henderson's motion. Nearly three years later, Henderson moved to lift the stay, both because of delays in *Harris* and because of our decision in *United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021). We granted the motion in part, lifting the stay but deferring the issuance of the briefing schedule. We also directed the parties to file letter briefs addressing whether summary action would be appropriate and discussing the effect of *Borden v. United States*, 141 S. Ct. 1817 (2021), in which the Supreme Court found that crimes that can be committed with recklessness do not qualify as "violent felonies" under the ACCA. Henderson moved for summary reversal, which we denied. We then directed that the appeal proceed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231, which provides district courts with original jurisdiction over "all offenses against the laws of the United States." We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), which permit review of district courts' final decisions and final sentences.

"Whether an offense qualifies as a crime of violence under the Sentencing Guidelines is a legal question that this Court typically reviews de novo."[5] However, when an appellant has previously failed to challenge an issue, we apply

---

[5] *United States v. Scott*, 14 F.4th 190, 194 (3d Cir. 2021) (citing *United States v. Henderson*, 841 F.3d 623, 626 (3d Cir. 2016)).

plain error review.[6] By contrast, we review the District Court's imposition of a condition of supervised release for abuse of discretion.[7]

## III.   DISCUSSION

### A.  The District Court Improperly Applied the Career Offender Enhancement in Sentencing Henderson.

#### i)  Standard of Review

Henderson first challenges application of the career offender enhancement, based on a conviction for conspiracy to commit robbery.  The government contends that Henderson waived this issue, inviting the error.[8]  The government, however, confuses waiver with forfeiture.

Waiver is the "intentional relinquishment or abandonment of a known right," while forfeiture is the "failure to make the timely assertion of a right."[9]  Waived arguments may not be reviewed on appeal while forfeited arguments are reviewable for plain error.[10]  A defendant waives a right when

---

[6] *United States v. Glass*, 904 F.3d 319, 321 (3d Cir. 2018).

[7] *United States v. Lee*, 315 F.3d 206, 210 (3d Cir. 2003).

[8] Although waiver is distinct from invited error, we address invited error in our analysis because the government relies on cases that do so, and because we often discuss invited error in determining whether an issue is waived.  *See, e.g.*, *Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 187 (3d Cir. 2019).

[9] *Id.* at 187 (quoting *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017)).

[10] *United States v. Olano*, 507 U.S. 725, 732–33 (1993).

that individual invites the error and "plays along with a flawed theory . . . throughout the litigation,"[11] "ultimately endors[ing]" the position, as a party may not "complain on appeal of errors that he himself invited or provoked or caused the court or the opposite party to commit."[12] In other words, to waive a challenge, a party must specifically assent and invite the error, "evinc[ing] an intent to proceed under" that theory.[13]

Simple concessions without more, however, qualify as forfeiture, not waiver. For example, in *United States v. Glass*, the appellant's counsel made "repeated concessions that Glass was a career offender," and yet, we found this constituted forfeiture and thus "review[ed] the imposition of the career-offender enhancement for plain error."[14]

Here, because the government confuses waiver for forfeiture, it improperly relies on *Robinson v. First State Community Action Agency*, which involved waiver. In *Robinson*, the defendant specifically assented to the jury instruction at issue, an instruction that had been the subject of litigation.[15] In contrast, Henderson neither invited nor assented to the error here, an error that was never in dispute. Rather, the Presentence Investigation Report introduced the error by labeling Henderson as a career offender. Henderson did not "invite, or provoke, or cause, the court or" the government to

---

[11] *Robinson*, 920 F.3d at 189.

[12] 9C Fed. Prac. & Proc. Civ § 2558 (3d ed.) (quoting *Harvis v. Roadway Exp. Inc.*, 923 F.2d 59, 60 (6th Cir. 1991)).

[13] *Robinson*, 920 F.3d at 188.

[14] 904 F.3d at 321.

[15] 920 F.3d at 187–89.

commit the error.[16] As in *Glass*, Henderson simply acquiesced, acknowledging that the Presentence Investigation Report categorized Henderson as a career offender. This constitutes forfeiture of Henderson's claim, not waiver.

Henderson's failure to object, based on our then-binding precedent in *United States v. Preston*, which held that conspiracy to commit robbery constituted a "violent felony" under 18 U.S.C. § 924(e)(2)(B), does not mean Henderson waived this issue. Repeated acquiescence does not qualify as waiver absent any indication of counsel's "knowledge of the error" or concession based on a tactical advantage or strategy.[17] In fact, Henderson could not have had knowledge of an error, and thus could not have abandoned or intentionally relinquished a known right when no right existed at the time. The controlling law at the time of Henderson's sentencing no longer holds due to subsequent Third Circuit and Supreme Court caselaw. That subsequent law established the right that Henderson now seeks to assert. Henderson has created no tactical advantage.[18]

As a result, Henderson's claim was forfeited, and we

---

[16] *See* 9C Fed. Prac. & Proc. Civ. § 2558 (3d ed.) (quoting *Harvis*, 923 F.2d at 60).

[17] *Gov't of Virgin Islands v. Rosa*, 399 F.3d 283, 291 (3d Cir. 2005).

[18] *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1910–11 (2018) ("It is hard to imagine that defense counsel would 'deliberately forgo objection *now*' to a plain Guidelines error that would subject her client to a higher Guidelines range." (emphasis in original)).

apply plain error review.

### ii) Conspiracy is Not a Crime of Violence under § 4B1.2(a)

Plain error review requires finding that (1) there is an error that has not been waived, (2) the error is plain, (3) the error affected appellant's substantial rights, and (4) the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."[19]

First, an error exists where a court "[d]eviat[es] from a legal rule."[20] Here, the District Court deviated from the "rule" that conspiracy does not qualify as a crime of violence, applying the career offender enhancement based on a finding that Henderson's conspiracy to commit robbery constituted a crime of violence. United States Sentencing Guideline § 4B1.2(a) defines "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year," that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is . . . robbery . . . ." The Guideline Commentary tries to expand this definition to include inchoate offenses, including conspiracy.[21] Yet in *United States v. Abreu*, we ignored the commentary and unambiguously found

---

[19] *Olano*, 507 U.S. at 732 (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)); Fed. R. Crim. P. 52(b); *see also Rosales-Mirales*, 138 S. Ct. at 1907 ("A plain Guidelines error that affects a defendant's substantial rights is precisely the type of error that ordinarily warrants relief under Rule 52(b).").
[20] *Olano*, 507 U.S. at 732–33.
[21] U.S.S.G. § 4B1.2 cmt.1.

that "crime of violence" excludes conspiracies, like Henderson's conviction relied upon by the District Court here.[22]

The government asks us to ignore *Abreu* and argues that we should rely on *United States v. Preston*,[23] in which we held that, under Pennsylvania law, criminal conspiracy to commit robbery does qualify as a "violent felony"[24] that could be used to apply the career criminal enhancement under the ACCA.[25] The government argues that *Preston*, rather than *Abreu*, still controls because a panel cannot overrule its Circuit's case law. However, a panel may do so when the decision conflicts with later Supreme Court decisions and subsequent case law applying those decisions. *Preston* presents such a conflict.[26]

In *Preston*, we assumed that, because the elements of a target offense of a conspiracy, which is distinct from the elements of conspiracy itself, must be defined for the jury, the

---

[22] 32 F.4th 271, 277–78 (3d Cir. 2022).

[23] 910 F.2d 81 (3d Cir. 1990).

[24] While *Preston* deals with a separate provision, it ultimately implicates the same issue: Whether conspiracy to commit robbery under Pennsylvania law is a violent crime. As a result, although "crime of violence" and "violent felony" are distinct, their "substantial similarity" means that "courts generally apply authority interpreting one provision to the other." *United States v. Brasby*, 61 F.4th 127, 132–33 (3d Cir. 2023). As the government itself contends, *Preston* is relevant and controls here. We thus directly discuss *Preston* to ameliorate any existing confusion left by *Abreu*.

[25] 910 F.2d at 86–87.

[26] *United States v. Tann*, 577 F.3d 533, 541 (3d Cir. 2009).

elements of conspiracy subsume the elements of the target offense.[27] Thus, while Pennsylvania statutes on conspiracy have no element involving the "use, attempted use, or threatened use of physical force against the person of another,"[28] in *Preston*, we determined that conspiracy to commit robbery involves force because the target offense, robbery, involves force.[29] In coming to this conclusion, however, we explicitly noted that it went "beyond the general elements of criminal conspiracy"[30]—an approach disallowed by the Supreme Court in *United States v. Mathis*.[31] As the *Mathis* Court noted, a crime's elements are "the constituent parts of a crime's legal definition, which must be proved beyond a reasonable doubt."[32]

---

[27] 910 F.2d at 86.

[28] Conspiracy to commit robbery in Pennsylvania only requires findings that an individual (1) "intended to commit or aid in the commission of" a robbery, (2) "entered into an agreement with another (a 'co-conspirator') to engage in the crime," and (3) "committed an overt act in furtherance of the" robbery. *Commonwealth v. Murphy*, 577 Pa. 275, 292 (2004).

[29] Even though elements of robbery must be detailed for the jury, they need not be proven beyond a reasonable doubt to convict an individual of conspiracy. *See United States v. Gore*, 636 F.3d 728, 731 (5th Cir. 2011) (rejecting *Preston*'s conclusion because "[t]he State of Pennsylvania could obtain a conviction of conspiracy without proving beyond a reasonable doubt that the defendant committed the crime that was the conspiracy's object").

[30] *Preston*, 910 F.2d at 86–87.

[31] 579 U.S. 500, 520 (2016).

[32] *Id.* at 500.

While the Supreme Court has not analyzed Pennsylvania robbery per se, in *United States v. Taylor* it analyzed a similar provision of robbery, federal robbery under the Hobbs Act, and found that attempted robbery does not constitute a crime of violence.[33] The Court applied the categorical approach and held that, while Hobbs Act robbery includes actual or threatened force, *attempted* Hobbs Act robbery does not.[34] While attempt and other inchoate crimes, such as Pennsylvania conspiracy,[35] require a substantial step or overt act, the step or act need not be forceful or criminal.[36] Thus, a reading of the statute that finds force would "vastly expand the statute's reach" and "defy our usual rule of statutory interpretation."[37] *Preston* cannot stand in light of the Supreme Court's refusal to include the elements of completed Hobbs Act robbery, which involves violence, in determining whether the inchoate offense on its own qualifies as a crime of violence.

*Preston* also conflicts with current Supreme Court guidance on the level of deference courts should afford Guideline Commentary. In *Preston,* we followed the approach in *Stinson v. United States*, in which the Supreme Court held that Guideline Commentary should enjoy deference unless it is "plainly erroneous or inconsistent with the [underlying] regulation."[38] In doing so, we accepted commentary to

---

[33] *United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022).

[34] *See id.* at 2020–23.

[35] *See* 18 Pa.C.S. § 903(e) (2005); *Murphy*, 577 Pa. at 292.

[36] *Taylor*, 142 S. Ct. at 2021 ("Simply put, no element of attempted Hobbs Act robbery requires proof that the defendant used, attempted to use, or threatened to use force.").

[37] *Id.* at 2023–24.

[38] 508 U.S. 36, 44 (1993).

12

U.S.S.G. § 4B1.2 that incorporated conspiracy into the definition of a crime of violence.[39] After the District Court sentenced Henderson, however, the Supreme Court overruled *Stinson* in *Kisor v. Wilkie*, revising the weight courts should afford agency interpretations.[40] There, the Court cut back broad deference to agency interpretation, holding that courts should not defer to an agency's interpretations absent genuine ambiguity or uncertainty within the text of the statute or regulation itself.[41] Such ambiguity is determined by applying the "traditional tools" of statutory construction and considering the "text, structure, history, and purpose of a regulation."[42] The Court further noted that not all reasonable agency interpretations of "truly ambiguous rules are entitled to deference."[43]

In *United States v. Nasir*, we first addressed the effect of *Kisor* on the application of the career offender enhancement.[44] We held that, because the definition of "controlled substance offense" under § 4B1.2(b) did not mention inchoate offenses, such offenses were unambiguously excluded.[45] Due to the language of the regulation, we afforded no *Kisor* deference to Guideline Commentary which suggested the inclusion of conspiracy and inchoate crimes.[46]

---

[39] 910 F.2d at 86–87.

[40] 139 S.Ct. 2400, 2414–15 (2019); *United States v. Nasir*, 17 F.4th 459, 471 (3d Cir. 2021) (en banc).

[41] *Kisor*, 139 S. Ct. at 2414–15.

[42] *Id.* at 2415.

[43] *Id.* at 2414.

[44] *Nasir*, 17 F.4th at 468.

[45] *Id.* at 471–72.

[46] *Id.*

Section 4B1.2(b) makes no mention of any inchoate offenses. However, § 4B1.2(a), the provision at issue here, includes "attempted use." Applying the canon of construction that "the expression of one thing is the exclusion of the other," this inclusion provides even more reason to find that the statute clearly excludes conspiracy from the definition of "crimes of violence."[47] As we pointed out in *Abreu*, the inclusion of "attempted use" in § 4B1.2(a) "makes clear that the Sentencing Commission knew how to include inchoate offenses in the Guidelines and opted here to include only attempt in the text, not conspiracy."[48] As a result, the definition of crime of violence unambiguously excludes conspiracy; thus, the District Court had "no plausible reason for deference."[49] Because *Kisor* preempts our analysis in *Preston* "that turned to the commentary rather than the text[, *Preston*] no longer hold[s]," and the District Court erred in applying *Preston*.[50]

The government argues that no error exists because the District Court did not deviate from the law *at the time* of Henderson's sentencing. However, plain error is evaluated

---

[47] *See id.*; *see also United States v. Winstead*, 890 F.3d 1082, 1091 (D.C. Cir. 2018).

[48] *Abreu*, 42 F.4th at 276. There is another reason here to look only to the plain text of the statute. The Guideline section at issue in *Abreu*, § 2K2.1, neither defined "crime of violence" nor provided a cross reference. We adopted the definition from an entirely different section, § 4B1.2(a), and *still* rejected conflicting commentary. Here, by contrast, the very statutory section at issue is the one containing the definition of crime of violence.

[49] *See Kisor*, 139 S. Ct. at 2415.

[50] *See Nasir*, 17 F.4th at 472 (Bibas, J., concurring).

14

based on the law applicable on appeal.[51]

Because Henderson has established the existence of an error, we proceed with the remaining three prongs of plain error review. The second step of plain error review asks whether the error is plain, that is, whether it is "clear" or "obvious."[52] Our above discussion demonstrates both that the elements of Pennsylvania conspiracy clearly do not include a requirement of force,[53] and that under *Abreu*, conspiracy does not qualify as a crime of violence.[54] As a result, it is both obvious and clear that the District Court's application of the career offender enhancement is a deviation from existing rules.

Third, an error "affect[s] substantial rights" if it "affected the outcome of the district court proceedings." A defendant has shown a reasonable probability of a different outcome when he was "sentenced under an incorrect Guidelines range—whether or not the ultimate sentence falls within the correct range."[55] Here, Henderson has shown that the District Court improperly applied the career offender enhancement, thus, sentencing Henderson under an incorrect Guideline range. Even though the District Court gave

---

[51] *Johnson v. United States*, 520 U.S. 461, 467–68 (1997).

[52] *Olano*, 507 U.S. at 734.

[53] *Murphy*, 577 Pa. at 292.

[54] *Abreu*, 32 F.4th at 274–78.

[55] *Rosales-Mireles*, 138 S. Ct. at 1907; *see also Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016) (An appellant who "has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome").

Henderson a lower sentence, it still accepted the Presentence Report findings on the career offender enhancement and sentenced Henderson above the range that would have otherwise applied. Henderson is not "required to show more."[56]

Fourth, the Supreme Court has held that any "possibility of additional jail time . . . warrants serious consideration" of reversal because "[t]he risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error."[57] The Court goes on to ask "what reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?"[58] "[T]he public legitimacy of our justice system relies on procedures that are 'neutral, accurate, consistent, trustworthy, and fair,' and that 'provide opportunities for error correction.'" [59] Accurate Guideline calculations are critical in "achieving uniformity and proportionality" and "providing certainty and fairness in sentencing."[60] Therefore, an error in a Presentence report that leads to an inaccurate Guideline

---

[56] *Molina-Martinez*, 578 U.S. at 201.

[57] *Rosales-Mireles*, 138 S. Ct. at 1907–08.

[58] *Id.* at 1908 (quoting *United States v. Sabillon-Umana*, 772 F.3d 1328, 1333–34 (10th Cir. 2014)).

[59] *Id.* (quoting Bowers & Robinson, *Perceptions of Fairness and Justice: The Shared Aims and Occasional Conflicts of Legitimacy and Moral Credibility*, 47 Wake Forest L. Rev. 211, 215–16 (2012)).

[60] *Id.* (quoting 28 U.S.C. § 994(f)).

range, like the error made here, ordinarily satisfies the fourth prong of plain error review.[61]

Because the District Court plainly erred, we will vacate Henderson's sentence and remand for resentencing. In doing so, we also hold that *Preston* is overruled by the Supreme Court's decisions in *Kisor* and *Mathis*.

## B. Polygraph Testing as a Condition of Supervised Release.

Henderson challenges special condition five of the terms of supervised release, which states that, if appropriate, Henderson is to participate in a mental health treatment program and to abide by its requirements and conditions, including "submission to polygraph testing to determine if [Henderson] is in compliance with the conditions of release."[62]

Conditions of supervised release must be "reasonably related to the factors set forth in" 18 U.S.C. § 3553(a), including "the nature and circumstances of the offense and the history and characteristics of the defendant," deterrence, protection of the public, and correctional treatment.[63] Further, the condition must "involve[] no greater deprivation of liberty than is reasonably necessary for the purposes set forth" above and be "consistent with any pertinent policy statements" made by the Sentencing Commission.[64]

We have affirmed imposing polygraph testing as a

---

[61] *See id.*
[62] Appellant Br. at 5.
[63] 18 U.S.C. §§ 3553(a), 3583(c)–(d).
[64] *Id.* § 3583(d).

condition of supervised release in sex offense cases.[65] In doing so, we have found that polygraph testing may be reasonably related to the factors set forth in § 3553(a) and does not involve a greater deprivation of liberty than reasonably necessary where the appellant is "already directed to report periodically to the probation officer and provide truthful answers."[66]

Henderson acknowledges these cases but argues that we should reject polygraph testing in drug cases. However, when imposing polygraph testing in sex offense cases, we have found that it is reasonably related to safety and rehabilitation where it "could be beneficial in enhancing the supervision and treatment of" the defendant.[67] This reasoning applies in other cases where polygraph testing might reasonably be expected to ensure a defendant's "compliance with [mental health or other] treatment" and would in turn deter the commission of future crime and "protect the public from further . . . offenses."[68] In affirming the imposition of polygraph testing, we have favorably cited *Owens v. Kelley*, in which the Eleventh Circuit affirmed the use of polygraph testing as a condition of supervised release in a drug case.[69]

With the above in mind, we nevertheless caution that

---

[65] *See, e.g.*, *Lee*, 315 F.3d at 217.

[66] *Id.* at 216–17.

[67] *Id.* at 217.

[68] *See* Appellant Br. at 39.

[69] *Lee*, 315 F.3d at 217 (quoting *Owens v. Kelley*, 681 F.2d 1362, 1370 (11th Cir. 1982)). The court in *Owens* found that polygraph testing is reasonably related to probation in a drug case in that "it deters [defendant] from violating the terms of his probation by instilling in him a fear of detection." 681 F.2d at 1370.

polygraph testing is not appropriate across the board, and we are not yet convinced that it is necessary here. In assessing a condition of supervised release, we look to the reasons given by the District Court. If the District Court fails to adequately explain its reasons for imposing a condition of supervised release or the condition's relationship to the applicable sentencing factors, we may still affirm the condition if we can "ascertain any viable basis for the . . . restriction in the record before the District Court . . . on our own."[70] In any event, "a condition with no basis in the record, or with only the most tenuous basis, will inevitably violate § 3583(d)(2)'s command that such conditions 'involve[] no greater deprivation of liberty than is reasonably necessary.'"[71]

The District Court provided no individual basis for imposing the condition here, instead, stating that it does so all the time. We will not search for viable bases in the record as we have already tasked the District Court with resentencing Henderson. As a result, on remand, if the District Court finds that polygraph testing is still an appropriate condition of Henderson's supervised release, the court should undertake an individual analysis and provide reasons in the record for imposing such a condition in Henderson's specific case.

---

[70] *United States v. Voelker*, 489 F.3d 139, 144 (3d Cir. 2007) (quoting *United States v. Warren*, 186 F.3d 358, 367 (3d Cir. 1999)). Henderson argues that the District Court's lack of factual findings constitutes procedural error. Henderson is incorrect as a matter of law.

[71] *United States v. Pruden*, 398 F.3d 241, 249 (3d Cir. 2005) (alteration in original) (quoting 18 U.S.C. § 3583).

## IV.    CONCLUSION

For the above reasons, we recognize that *Preston v. United States* has been overruled, and we will vacate Henderson's sentence and remand for resentencing in line with this opinion.