**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2044
_____

UNITED STATES OF AMERICA

v.

ABID STEVENS,
                    Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:19-cr-00350-002)
District Judge:  Honorable Jan E. DuBois
_____

Argued on November 16, 2022 and January 18, 2023

Before: AMBRO*, KRAUSE and BIBAS, Circuit Judges

(Opinion filed: June 12, 2023)

_____

* Honorable Thomas L. Ambro assumed senior status on
February 6, 2023.

Daniel J. Auerbach                    **(ARGUED)**
Auerbach
241 S 6th Street, #1902b
Philadelphia, PA 19106

Robert M. Gamburg
Suite 1203
1500 John F. Kennedy Boulevard
Two Penn Center Plaza
Philadelphia, PA 19102

       *Counsel for Appellant*


Bernadette A. McKeon                  **(ARGUED)**
Robert E. Eckert, Jr.
Robert A. Zauzmer
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

       *Counsel for Appellee*

————————————

OPINION

————————————

KRAUSE, *Circuit Judge*.

Supreme Court precedent is now clear that when Congress expressly and unambiguously defines a common-law term in a way that deviates from its historical meaning, such "contrary direction" precludes our consideration of both legislative history and the "cluster of ideas" typically associated with that term at common law. *Carter v. United States*, 530 U.S. 255, 264–65 (2000) (citation omitted). But this was not always pellucid, and when we described the elements of Hobbs Act robbery in *United States v. Nedley* over sixty-five years ago, we relied heavily on both legislative history and common law to import two additional elements into the statutory definition of "robbery" in 18 U.S.C. § 1951(b)(1): a "specific intent to steal and to permanently deprive the owner or possessor of his property" and a requirement that there be not merely the "taking" but also a "carrying away" of that property. 255 F.2d 350, 351, 356–57 (3d Cir. 1958).

Relying on *Nedley*, Appellant Abid Stevens argues that his conviction for Hobbs Act robbery must be vacated because the District Court failed to charge the jury on those elements and the Government failed to prove them. But those elements are absent from the Hobbs Act's unambiguous statutory definition of "robbery," and we acknowledge today that *Nedley* has been abrogated by intervening Supreme Court precedent, so we will affirm Stevens's Hobbs Act robbery conviction. In addition, because Stevens's robbery conviction qualifies as a "crime of violence" under 18 U.S.C. § 924(c) regardless of whether it was predicated on the Government's aiding and abetting or its alternative *Pinkerton* conspiracy theory, we will also affirm his conviction for that offense.

## I.    BACKGROUND

In January 2020, Stevens and co-defendants Maurice Quinn and Donnie Smith were tried in connection with the armed robbery of a Philadelphia convenience store. The evidence at trial, including witness testimony, video footage, and the guns and money recovered from the defendants, reflected that Quinn entered first, stopped in front of the store's ATM, and then attempted to buy a pack of cigarettes with a $20 dollar bill that the clerk immediately rejected as counterfeit. Quinn responded that the bill had just come out of the ATM and demanded that the clerk reimburse him with genuine bills for a series of withdrawals totaling $100 that he had made that day.

Events unfolded quickly when the clerk refused. As Quinn walked behind the counter and began shoving and shouting at the clerk, Stevens entered the store and confronted the clerk from the other side of the counter. But when the clerk grabbed the store's security pistol, both made a quick exit, with Stevens "screaming" at the clerk for having retrieved the security pistol and threatening that they would return. App. 217–18.

Return they did, in short order. Quinn came back first, followed by Donnie Smith, who pulled out a gun and pointed it at the clerk's head. Then Stevens returned, also holding a gun, and the three defendants forced the clerk to the cashier's booth where Smith disarmed him and Quinn made him open the register. Smith told Quinn to "take everything," *id.* at 414, but Quinn took only $100 before he headed for the exit, yelling to Stevens to let him take Stevens's gun with him. After a brief argument, Stevens handed it to Quinn, who then left the store.

4

That was not the end of the encounter, however, even for Quinn. As he left, the store's owner came in and confronted Stevens and Smith. Stevens, lamenting that they went through "all this for $100," *id.* at 418, attempted to persuade the owner that he was just there trying to "fix things," *id.* at 490. As Stevens was talking to the owner, Quinn pulled out Smith, who was still holding the store's security pistol. Smith fled by car, chased by the police, while Quinn escaped on foot. Stevens, meanwhile, yelled at the store owner for having called the police, told her that he "owned the neighborhood" and "would close the store at any time he want[ed] to," *id.* at 354, and then also departed by foot. All three defendants were arrested within a few months.

At the conclusion of trial, the District Court instructed the jury that each defendant could be convicted of Hobbs Act robbery under three alternative theories of liability: direct, aiding and abetting, or for participation in a *Pinkerton* conspiracy. The District Court further instructed that defendants could be convicted under § 924(c) based on either a direct or an aiding and abetting theory. After deliberating for several hours, the jury found Stevens, Smith, and Quinn guilty on all counts in a general verdict, and the District Court denied their motions for judgment of acquittal. Stevens now brings this timely appeal.[1]

---

[1] Quinn and Smith have also appealed their respective convictions, *United States v. Maurice Quinn* (21-2174); *United States v. Donnie Smith* (21-1384), but we will resolve those appeals separately.

## II.   DISCUSSION[2]

Stevens raises two arguments on appeal.  First, although he concedes that the evidence would be sufficient to sustain his Hobbs Act robbery conviction if that were merely a general-intent crime, he asserts that Hobbs Act robbery requires a "specific intent to permanently deprive the victim of property," Opening Br. 1, and that a properly instructed jury could not have found that element satisfied.  Second, he claims that his § 924(c) conviction cannot stand because he did not commit a "crime of violence."  While Stevens styles this as a sufficiency-of-the-evidence claim, his challenge, at bottom, is that a conviction under an aiding and abetting or a *Pinkerton* theory of liability for a completed crime of violence—here, Hobbs Act robbery—does not itself qualify as a crime of violence for purposes of § 924(c).  We address each argument below.

### A.   The District Court Correctly Charged the Jury on the Elements of Hobbs Act Robbery.

Stevens contends that Hobbs Act robbery requires a specific intent to permanently deprive a victim of property and that, by failing to instruct the jury on this element, the District Court deprived him of "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt."  Reply Br. 3 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000)) (internal quotation marks omitted).  Because trial counsel failed to raise this objection at trial, we review only for plain error. *See United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005) (citation omitted).

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

In the context of jury instructions, however, that is not a particularly heavy burden because a trial court has an independent "obligation to distill the law correctly" for the jury, *Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 190 (3d Cir. 2019), so its "omission of an essential element of an offense . . . ordinarily constitutes plain error," *United States v. Haywood*, 363 F.3d 200, 207 (3d Cir. 2004) (citation omitted) (emphasis omitted). Here, however, we discern no error, much less plain error.

Stevens bases his argument on our 1958 decision in *Nedley*. There, we held that, absent "contrary direction" from Congress, we presume it "knows and adopts the cluster of ideas that [are] attached to each . . . word" that it has "borrowed" from the common law. 255 F.2d at 357 (quoting *Morissette v. United States*, 342 U.S. 246, 263 (1952)) (internal quotation marks omitted). Notwithstanding the Hobbs Act's express definition of "robbery" in § 1951(b)(1), we stated that Congress had not provided such contrary direction because the Act's legislative history suggested an intent to adopt common-law robbery. *Id*. at 355–57. Specifically, we observed that the Congressional Record suggested the Act's robbery definition was "copied from the New York Code substantially," so we reviewed the "New York Penal Laws relating to robbery and the construction given them by the New York courts." *Id.* at 355 (citations and internal quotation marks omitted). From that review, we determined that "while [the Penal Laws did not] specify any requirement of 'intent' or 'asportation' or 'carrying away', the New York courts have ruled that they are elements of robbery and must be established in order for a conviction to stand." *Id.* (citations omitted). We therefore concluded that "'[r]obbery' under the Hobbs Act . . . is common law robbery," which requires the Government to

7

additionally "prove [1] forcible taking and [2] carrying away [3] with the *specific intent* to steal personal property taken from the person of another by violence or putting in fear, and [4] with the *intention to permanently keep* the property so taken." *Id.* at 357 (emphases added).

In the sixty-five years since *Nedley*, the Supreme Court's approach to statutory construction has changed significantly. Today, the Court only looks to legislative history, if at all, "when interpreting *ambiguous* statutory language." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1749 (2020) (emphasis in original). And although the Court has continued to impute common-law concepts when a "federal criminal statute uses a common-law term of established meaning," *Moskal v. United States*, 498 U.S. 103, 114 (1990) (citation and internal quotation marks omitted), it has applied that imputation doctrine only to specific undefined words or phrases within a statute rather than to the statutory offense as a whole, *see, e.g.*, *Evans v. United States*, 504 U.S. 255, 259–63 (1992) (imputing common-law meaning to the undefined phrase "under color of official right" within the Hobbs Act's definition of extortion while pointing out that "the present statutory text is much broader than the common-law definition of extortion because it [also] encompasses conduct by a private individual"). Where the statutory text is unambiguous, we need look no further. *See Carter v. United States*, 530 U.S. 255, 266–67 & n.5 (2000).

This evolution in statutory construction informed the Supreme Court's decisions in two cases that bear directly on our ruling today. In *United States v. Culbert*, the Court rejected the argument that the Hobbs Act required the Government to prove that a defendant's conduct constituted "racketeering." 435 U.S. 371, 373 (1978). Instead, the Court looked to "the

8

face of the statute," *id.*, observed that it "carefully defines its key terms, such as 'robbery,' 'extortion,' and 'commerce,'" *id.*, found corroboration in the legislative history, *id.* at 374–75, and ultimately held that "Congress intended to make criminal all conduct within the reach of the statutory language," *id.* at 380.

More recently, in *Carter*, the Court considered whether Congress "sought to discard the [common-law] asportation requirement" when it criminalized bank robbery in 18 U.S.C. § 2113(a), which defines the offense in terms nearly identical to § 1951(b)(1).[3] 530 U.S. at 272. The appellant there argued that because § 2113(a) describes a "*similar*" offense to common-law robbery, the Court "must assume" that it requires the "*same* elements" as its "common-law predecessor[]." *Id.* at 264. The Court disagreed, explaining that the "common law should be imported into statutory text only when Congress employs a common-law *term*," not when it merely describes an analogous offense. *Id.* at 265. It added that although the term

---

[3] In relevant part, 18 U.S.C. § 2113(a) defines robbery as "[w]hoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, . . . any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank," while the Hobbs Act defines it as the "unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining," 18 U.S.C. § 1951(b)(1).

9

"robbery" appeared in the statute's title, which could be relevant to "'shed[] light on some ambiguous word or phrase' in the statute itself," there was not "any such ambiguous language" in § 2113(a). *Id.* at 267 (citation omitted).

Instead, the Court explained, Congress unambiguously opted against asportation and specific-intent requirements by not "simply punish[ing] 'robbery' . . . , thereby leaving the definition of [that] term[] to the common law," but "instead followed the more prevalent legislative practice of spelling out elements of [the] crime[]." *Id.* at 267 n.5. *Carter* thus also rejected the argument that legislative history compelled a common-law reading of "robbery," noting that "[s]uch reasoning [] misunderstands our approach to statutory interpretation." *Id.* at 270–71. The *Carter* Court explained that, "[i]n analyzing a statute, [a court] begin[s] by examining the text . . . , not by 'psychoanalyzing those who enacted it,'" *id.* at 271 (citations omitted). But where the text of a "statute by its terms does not contain" a mental state, *id.* at 267–68 (quoting *United States v. X–Citement Video, Inc.*, 513 U.S. 64, 70 (1994)), the court instead applies the "presumption in favor of scienter," and reads in "only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct,'" *id*. at 268–69 (quoting *X–Citement Video, Inc.*, 513 U.S. at 72).

As relevant here, the Court ultimately held that while "some situations may call for implying a specific intent requirement into statutory text," *id.* at 269, where a statute criminalizes a "forceful taking," a "general intent requirement suffices," *id.* at 269–70 (noting that once "proof of knowledge with respect to the *actus reus* of the crime . . . and [the] actus reus are shown . . . , a forceful taking—even by a defendant who takes under a good-faith claim of right—falls outside the

realm of the 'otherwise innocent'"); *see also Elonis v. United States*, 575 U.S. 723, 737 (2015).

Stevens attempts to distinguish *Carter* in a number of ways, none of which is persuasive. First, he points out that "robbery" only appeared in the title of § 2113, while it appears in the text of § 1951(b), and he argues on that basis that it is sufficiently ambiguous to impart a common-law reading. But that argument ignores the express definition of "robbery" in § 1951(b)(1). *Cf. Moskal*, 498 U.S. at 114 (noting that we adopt common law meaning when Congress uses a term "*without otherwise defining it*") (citation omitted and emphasis added). And the definition in § 1951(b) is virtually identical to the description of the robbery offense in § 2113(a). Thus, the *Carter* Court's refusal to read in "'extra' [common-law] elements" maps directly onto the Hobbs Act, as the Act's express definition of robbery precludes the applicability of the canon on imputing common law meaning. *Carter*, 530 U.S. at 267.

Next, Stevens points out that the Supreme Court has relied on legislative history to justify importing common-law concepts into the Hobbs Act's definition of extortion in § 1951(b)(2). *See, e.g.*, *Evans*, 504 U.S. at 264; *see also Sekhar v. United States*, 570 U.S. 729, 732–35 (2013); *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 402–03 & n.7 (2003). In those cases, however, the Court looked to legislative history and, in turn, to the common law to interpret particular terms within the definition of "extortion"—namely, "under color of official right" in *Evans*, 504 U.S. at 256, and "obtaining of property" in *Sekhar*, 570 U.S. at 730, and *Scheidler*, 537 U.S. at 400—not to substitute the common-law definition of the entire offense for the statutory one or to add an element to the statutory offense that was not grounded in the

text. Because Stevens does not point us to any such undefined term here, we see no need to review legislative history.

Finally, Stevens argues that, while § 2113 prohibits only the "taking" of property, Hobbs Act robbery prohibits the "taking or obtaining" of property, and "obtaining" must carry the same common-law connotation of permanent deprivation in § 1951(b)(1) as *Sekhar* and *Scheidler* said it does in § 1951(b)(2). The problem here is that *Sekhar* and *Scheidler* said no such thing. In *Sekhar*, the Court held that Hobbs Act extortion did not cover threats made to induce an investment recommendation because "[o]btaining property requires 'not only the deprivation but also the acquisition of property,'" 570 U.S. at 734, (quoting *Scheidler*, 537 U.S. at 404), and a recommendation "was not *obtainable property*" that the perpetrator could acquire, *id.* at 737 (emphasis in original). *Scheidler* likewise made no mention of asportation and held only that extortion did not cover protests that "in some instances completely deprived" abortion clinics of their ability to operate because the protesters interfered with an "alleged property right" but did not receive "something of value from" the clinics. 537 U.S. at 404–05 (citation and internal quotation marks omitted). Thus, none of Stevens's attempts to distinguish *Carter*'s central holding persuade us.

As such, we believe that *Culbert* and *Carter* have undermined the *Nedley* Court's rationale for looking to the Hobbs Act's legislative history, along with its decision to impute common-law meaning for a statutorily defined term. *See DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 76 (3d Cir. 2018). And while our Internal Operating Procedures "generally obligate[] [us] to follow our precedent absent en banc reconsideration," *Karns v. Shanahan*, 879 F.3d 504, 514 (3d Cir. 2018) (discussing 3d Cir. I.O.P. 9.1), they "must give

12

way" where, as here, a "prior panel's holding is in conflict with Supreme Court precedent,'" *id.* at 515 (citation and internal quotation marks omitted); *see also United States v. Henderson*, 64 F.4th 111, 118 (3d Cir. 2023). Accordingly, we recognize that *Nedley*'s analysis and holding with respect to the applicable *mens rea* for Hobbs Act robbery have been abrogated by intervening precedent.

Further reinforcing this conclusion, every other Court of Appeals to have squarely considered this issue has concluded that Hobbs Act robbery is a general-intent crime. *See, e.g.*, *United States v. García-Ortiz*, 904 F.3d 102, 108 (1st Cir. 2018) ("The elements of Hobbs Act robbery similarly include 'an implicit mens rea element of general intent—or knowledge—as to the actus reus of the offense.'") (internal quotations omitted); *United States v. Gray*, 260 F.3d 1267, 1283 (11th Cir. 2001) ("[T]he only mens rea required for a Hobbs Act robbery conviction is that the offense be committed knowingly."); *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999) ("Although not stated in the Hobbs Act itself, criminal intent—acting 'knowingly or willingly'—is an implied and necessary element that the government must prove for a Hobbs Act conviction.") (citation omitted). The Eleventh Circuit even went so far as to expressly reject *Nedley* and to observe that intervening Supreme Court cases "indicate that it may have been wrongly decided." *United States v. Thomas*, 8 F.3d 1552, 1563 (11th Cir. 1993).

The abrogation of *Nedley* is fatal to Stevens's Hobbs Act robbery claim. The Court's directive in *Carter* and the general-intent standard adopted by our sister Circuits map directly onto our Third Circuit Model Jury Instructions for Hobbs Act robbery, which the District Court followed nearly

13

verbatim here.[4]  *See* App. 1142–43; Third Circuit Model Criminal Jury Instructions § 6.18.1951.  Under those instructions, the Government must prove that a defendant acted "knowingly and willfully," a phrase which we have previously interpreted to mean "knowledge that [one's] conduct was, in some general sense, 'unlawful,'" *United States v. Starnes*, 583 F.3d 196, 210 (3d Cir. 2009) (citations omitted).  Thus, the District Court's instruction here fits squarely within the general-intent standard that *Carter* prescribed for "forceful takings."

In sum, the District Court did not err, much less plainly err, in giving this jury instruction, and Stevens concedes that a reasonable jury, following this instruction, could have concluded that he aided and abetted Smith's completed Hobbs Act robbery by intending to "facilitate[] the taking of the gun from the clerk."  Opening Br. 25; *see also Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (explaining that the relevant question for evidence sufficiency claims is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").  We will therefore affirm that robbery conviction.

---

[4] Of course, adherence to the Model Jury Instructions does not preclude the possibility of plain error.  These instructions are "neither law nor precedential," *Robinson*, 920 F.3d at 190, and are therefore "reviewed like any other instructions for their correctness, both on plenary review and plain-error review," *id.* at 190 n.38.

14

**B.    Stevens Committed a Crime of Violence Under 18 U.S.C. § 924(c).**

We turn next to Stevens's § 924(c) challenge.  Section 924(c) punishes "any person who, during and in relation to any crime of violence . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."  18 U.S.C. § 924(c)(1)(A).  Here, Stevens asserts that "[a] conviction under § 924(c) for carrying a gun during a 'crime of violence' requires a predicate conviction for a crime of violence," and that he committed no such crime.  Opening Br. 27 (citation omitted).  While Stevens frames this as a sufficiency-of-the-evidence challenge, it necessarily requires us to consider whether his conviction for Hobbs Act robbery qualifies as a valid § 924(c) predicate, even if Stevens has not framed it in those terms.  *See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) ("[A] court may consider an issue antecedent to . . . and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief.") (quotation omitted).

To qualify as a crime of violence, a crime must fall within the ambit of the so-called "elements clause" of § 924(c).  Under that clause, a predicate must have "as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  The inquiry turns on whether a crime "*always* requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force."  *United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022) (emphasis added).  In answering that question, however, we "'look only to the statutory definitions'—*i.e.*, the elements— of a defendant's [] offense[], and *not* 'to the particular facts

underlying [the offense].'" *Descamps v. United States*, 570 U.S. 254, 261 (2013) (emphasis in original) (citation omitted).

Importantly, in assessing whether Stevens's conviction qualifies, we do not start with a blank canvas. While Stevens's appeal was pending, we decided *United States v. Stoney*, where we held that *Taylor*, 142 S. Ct. 2015—a recent Supreme Court ruling that attempted Hobbs Act robbery does not satisfy the elements clause—"[did] not change our [pre-*Taylor*] position" that "completed Hobbs Act robbery is categorically a crime of violence under § 924(c)(3)(A)." 62 F.4th 108, 113–14 (3d Cir. 2023). That said, *Stoney*'s direct offense analysis does not end our inquiry, as Stevens himself did not actually take anything from the convenience store, and the *Stoney* Court expressly left open whether a Hobbs Act robbery conviction under an aiding and abetting or a *Pinkerton* theory of guilt—which the District Court charged in the alternative here—qualifies as a valid § 924(c) predicate. *Id.* at 112.

Our analyses are straightforward for both theories of liability. Section 2 of U.S. Code, Title 18, the federal aiding and abetting statute, requires the Government to prove "(1) that the *substantive crime has been committed*; and (2) that the defendant charged with aiding and abetting knew of the commission of the substantive offense and acted with intent to facilitate it." *United States v. Petersen*, 622 F.3d 196, 208 (3d Cir. 2010) (emphasis added) (citations omitted). That distinguishes § 2 offenses from the types of inchoate offenses that require only that a defendant take a "substantial step" towards a completed offense. *Taylor*, 142 S. Ct. at 2021; *Henderson*, 64 F.4th at 119 (citation omitted). Under § 2, where the underlying substantive offense includes, as an element, the use of physical force, that same physical force is necessarily an element of aiding and abetting liability. *See,*

16

*e.g.*, *United States v. Ali*, 991 F.3d 561, 574 (4th Cir. 2021) ("[A]iding and abetting a crime has the exact same elements as the principal offense."); App. 1149 (instructing that aiding and abetting liability requires that "someone, including one of the Defendants, committed the offense charged by committing each of the elements of the offense"). And because the force required for completed Hobbs Act robbery is sufficient to satisfy the elements clause, *Stoney*, 62 F.4th at 113, the force required for an aiding and abetting conviction is necessarily also sufficient.

True, the force required for abetting liability need not actually come from the abettor herself. But § 924(c) lacks any personal "use of force" requirement, and the relevant inquiry looks to the elements of the underlying offense. *Taylor*, 142 S. Ct. at 2020. Even if § 924(c) did require an individualized use of force, § 2 provides that "the acts of the principal become those of the aider and abettor as a matter of law." *In re Colon*, 826 F.3d 1301, 1305 (11th Cir. 2016) (citation omitted); *see also Sasay v. Att'y Gen. United States*, 13 F.4th 291, 294 n.3 (3d Cir. 2021) (noting that when applying the categorical approach we "treat the commission of [aiding and abetting] crimes the same" as a principal's crime) (citation omitted). Thus, we join the other circuits that have unanimously reached the same conclusion: aiding and abetting a completed Hobbs Act robbery qualifies as a crime violence under § 924(c). *See, e.g.*, *García-Ortiz*, 904 F.3d at 109; *United States v. McCoy*, 995 F.3d 32, 57–58 (2d Cir. 2021), *vacated on other grounds*, 142 S. Ct. 2863 (2022); *Ali*, 991 F.3d at 573–74; *United States v. Hill*, 63 F.4th 335, 363 (5th Cir. 2023); *United States v. Richardson*, 948 F.3d 733, 741–42 (6th Cir. 2020); *United States v. Worthen*, 60 F.4th 1066, 1069–70 (7th Cir. 2023); *Young v. United States*, 22 F.4th 1115, 1123 (9th Cir. 2022)

17

(same for bank robbery); *United States v. Deiter*, 890 F.3d 1203, 1214–16 (10th Cir. 2018) (same for bank robbery); *In re Colon*, 826 F.3d at 1305.

Likewise, under a *Pinkerton* liability theory, where the use of physical force is an element of the completed offense, it suffices to impute use of force to co-conspirators. Under *Pinkerton*, the Government may "prove the guilt of one defendant through the acts of another committed within the scope of and in furtherance of a conspiracy of which the defendant was a member, provided the acts are reasonably foreseeable as a necessary or natural consequence of the conspiracy." *United States v. Lopez*, 271 F.3d 472, 480 (3d Cir. 2001) (citing *Pinkerton v. United States*, 328 U.S. 640, 647–48 (1946)). So like aiding and abetting liability, *Pinkerton* liability requires proof that at least one conspirator "commit[ed] each of the elements of [the underlying substantive] offense," App. 1154; *see also Lopez*, 271 F.3d at 480, and thus also necessarily satisfies § 924(c)'s elements clause, *see, e.g.*, *United States v. Serrano-Delgado*, 29 F.4th 16, 28 (1st Cir. 2022); *United States v. Gahagen*, 44 F.4th 99, 109 (2d Cir. 2022) (same for bank robbery); *United States v. Gillespie*, 27 F.4th 934, 942 (4th Cir. 2022); *Reyes v. United States*, 998 F.3d 753, 757–59 (7th Cir. 2021) (same for bank robbery); *United States v. Henry*, 984 F.3d 1343, 1356 (9th Cir. 2021) (same for bank robbery).

Stevens's § 924(c) challenge here is therefore unavailing. He indisputably brandished his firearm during Smith's completed Hobbs Act robbery, and while the jury's general verdict obscures whether Stevens's Hobbs Act robbery conviction was based on an aiding and abetting or a *Pinkerton* theory of guilt, under either theory he is liable for committing

18

a crime of violence.  *See, e.g.*, *Worthen*, 60 F.4th at 1069–70; *Henry*, 984 F.3d at 1356.

## III.    CONCLUSION

For the foregoing reasons, we will uphold Stevens's convictions and the judgment of the District Court.